**Barbara FANNING, Petitioner,**

v.

**The SUPERIOR COURT of the State of Delaware, IN AND FOR NEW CASTLE COUNTY, and the Honorable Robert C. O'Hara, an Associate Judge of said Court, Respondents.**

**Scott AHLGREN, Petitioner,**

v.

**The SUPERIOR COURT of the State of Delaware, IN AND FOR NEW CASTLE COUNTY, and the Honorable Robert C. O'Hara, an Associate Judge of said Court, Respondents.**

Supreme Court of Delaware.

April 26, 1974.

Richard G. Elliott, Jr., of Richards, Layton & Finger, Wilmington for petitioner Barbara Fanning.

Charles K. Keil, of Bayard, Brill & Handelman, Wilmington, for petitioner Scott Ahlgren.

Joseph A. Hurley, Deputy Atty. Gen., Wilmington, for respondents.

CAREY and DUFFY, JJ., and BROWN, Vice-Chancellor, sitting.

CAREY, Justice:

Petitioners Barbara Fanning and Scott Ahlgren ask for the issuance of Writs of Prohibition directed to the Superior Court and respondent Judge, directing said Judge and Court to refrain and desist from any further proceedings in Criminal Action No. 1375, and requiring that petitioners be dismissed. We are of the opinion that the writs should issue.

This is the history of the case: On August 14, 1972, petitioners were arrested for drug offenses. They were indicted in September, 1972. The case was set for trial on July 24, 1973. On that date, for reasons discussed below, the Court declared a mistrial *sua sponte*. Petitioners filed appropriate motions below seeking to dismiss the case, arguing that reprosecution was barred by the Fifth Amendment of the Federal Constitution and Article 1, Section 8 of the Bill of Rights of the Delaware Constitution, Del.C.Ann.[1] Those motions were denied below. On November 24, 1973, petitioners filed separate Petitions for Writs of Prohibition in this Court, and on January 9, 1974, Justice Duffy issued a Rule to Show Cause under Supreme Court Rule 17, Del.C.Ann. This opinion is our disposition of the case on its merits.

The issue before us is whether the trial Court's *sua sponte* declaration of a mistrial, without defendants' consent, constituted an abuse of discretion, whereby the State is barred from re-trying these petitioners by reason of the constitutional prohibition against "double jeopardy."

In October, 1972, the lower Court entered a Consent Order, directing the State to produce for Fanning all toxicologists' reports and other scientific reports in connection with the indictments. In May and July of 1973, shortly before the trial date,

Fanning's counsel wrote to the Deputy Attorney General handling the case, requesting the toxicologist's reports. Those reports were not forthcoming. On the day of trial, some 20 minutes before the jury was to be chosen, Fanning was given one toxicologist's report dated July 23, 1973. On the first day of trial, after two of the State's witnesses had testified, Fanning received for the first time the other two toxicologist's reports dated November 14, 1972. Fanning sought to suppress the reports from evidence and to sever the counts of the indictment, but the Court refused to sever the charges or the defendants, and denied the motion to suppress the reports.

When the Court reconvened after a short recess, counsel for Fanning was equivocal about what measures he wanted taken to protect his client. He was not able to say that his client would not be prejudiced if the trial were to proceed, and stated his need to consult with his own expert. He indicated an unwillingness to ask for mistrial because he wanted to proceed with the jury which had been drawn. Counsel for Ahlgren insisted that the trial should continue as against his client; he had no interest in the reports, and had made no objection to their admission. The Court, *sua sponte,* declared a mistrial as to both defendants; both counsel noted exceptions.

■ The question now is whether these defendants can be retried. We hold that they cannot. The defendants were placed in jeopardy when the jury was sworn and testimony taken. Hall v. State, Del.Ct. Gen.Sess., 3 W.W.Harr. 233, 134 A. 692 (1926); a retrial of these defendants would constitute double jeopardy.

■ We have considered this issue in a different context in Rentoul v. State, Del. Supr., 301 A.2d 284 (1973), wherein we found no abuse of discretion in declaring a

1. Those Constitutions provide, *inter alia,* that no person shall be for the same offense twice put in jeopardy of life or limb.

mistrial, *sua sponte*. This case is quite different. Here, the jury was not contaminated, as it had been in *Rentoul, supra.* Here, the threat of prejudice to appellant Fanning, if any, was caused by the State's failure to comply with a Court Order,[2] and not by the fault of both sides as in *Rentoul*. We infer no bad faith or evil motive on the part of the State in this case, but we do detect the kind of circumstances which certainly could lead to the sort of prosecutorial manipulation against which United States v. Jorn, 400 U.S. 470, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971) and Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) have cautioned. But this aspect of the case is not alone determinative of the issue. Nor does a determination of which party benefitted from the mistrial resolve the issue. See United States v. Jorn, *supra.* The test by which the *sua sponte* declaration of a mistrial must be judged was enunciated in United States v. Perez, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824): a mistrial is proper "whenever . . ., taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* The Supreme Court has recently reiterated the *Perez* test in State of Illinois v. Somerville, 410 U.S. 458, 93 S. Ct. 1066, 35 L.Ed.2d 425 (1973), in which case the Court, following its earlier decisions, continued to emphasize that the facts of each case must be weighed carefully against the language of *Perez, supra.*

 Every defendant in a criminal case has a valued right to have his trial completed by a particular tribunal. Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L. Ed. 974 (1949). It is this right which must be borne in mind and protected through scrupulous exercise of judicial discretion.

The "double jeopardy" clause means that in cases of this nature a Judge's discretion to abort a criminal proceeding after jeopardy has attached is rather narrow. Less severe alternatives must be fully explored before denying the defendant the right to proceed with the jury then impaneled; if no less drastic measure is practicable, then a mistrial must be declared of manifest necessity. We are compelled to conclude that in this case the declaration of a mistrial was an abuse of discretion. Considering all of the circumstances (the State's failure to comply with the Order; the defendants' refusal to move for a mistrial; and the other alternatives available to the trial Court)[3], we hold that these defendants cannot again be subject to prosecution.

For the aforementioned reasons, the Writs shall issue.

---

2. The State argued that the Medical Examiner's Office was *so* overworked that compliance with the Order was not possible. We note, however, that the two reports in question were prepared on November 24, 1972, some eight months before trial. Clearly, the defendants were not responsible for the delay, whatever may have been the cause.

3. For example, a recess until the following morning may have satisfactorily solved the problem.