Richard F. HUGHEY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 9, 1986.
Decided: March 10, 1987.

Louis B. Ferrara (argued) and Michael W. Modica of Aerenson, Ferrara & Lyons, Wilmington, Jean Ashe Crompton (argued) of Crompton & Gritz, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Deputy Atty. Gen., Chief of Appeals Division (argued), and Timothy J. Donovan, Deputy Atty. Gen., Wilmington, for appellee (both counsel only on appeal).

Before HORSEY, MOORE, and WALSH, JJ.

HORSEY, Justice:

The defendant, Richard F. Hughey, indicted for vehicular homicide in the second degree (11 *Del.C.* § 630(a)(2)), seeks reversal of his conviction in trial by jury in Superior Court of the lesser included offense of driving under the influence of alcohol (21 *Del.C.* § 4177). Defendant appeals the Superior Court's denial of his three pretrial motions to dismiss on grounds of (1) double jeopardy; (2) unnecessary delay; and (3) denial of right to a speedy trial. We find no reversible error and therefore affirm.

\* \* \*

The facts may be summarized as follows: On October 10, 1983, a passenger in the car driven by Hughey, a serviceman stationed at Dover Air Force Base, was killed when the car ran off the road and hit a pole. On October 18, Hughey was arrested and charged with vehicular homicide in the first degree. The State, however, *nolle prossed* this charge on January 9, 1984, with the understanding that Hughey would be reindicted on the lesser charge of second degree vehicular homicide. In exchange for the reindictment, Hughey waived his right to a speedy trial on February 7.

Although Hughey's trial was originally scheduled for May 1, on April 30 the trial date was postponed until July 31. The reasons for this continuance, however, are unclear.[1] Hughey contends that three

---

1. The Superior Court did not make a contemporaneous record of the teleconference during which the rescheduling was granted. Similarly, the Court heard arguments and made other rulings in chambers without a court reporter present to make a record. We emphasize that

days before trial the State learned that he was not going to call as a witness his friend, Douglas Westover. Westover, a serviceman stationed with the Air Force in the state of New York, was a passenger in the automobile at the time of the accident. Furthermore, the State needed Westover's testimony to establish the elements of vehicular homicide second, namely, that Hughey was driving the car and that he was speeding. Hughey, therefore, argues that because the State had failed to subpoena its essential witness, Westover, the sole reason for the continuance was the State's unpreparedness for trial. The State, however, contends that the continuance was also granted, in part, because there was an open question as to the legal necessity to preserve blood alcohol samples.

Prior to the July 31 trial date, the State contacted Westover, both by telephone and by letter, at his duty station in New York regarding his appearance at Hughey's trial. Although the State did not subpoena Westover in accordance with the interstate compact, 11 *Del.C.* § 3523,[2] it mailed him a sheriff's subpoena in order for him to receive a permissive absence from his duties. The State also made arrangements to reimburse Westover for his travel expenses to Delaware. Thereafter, Westover informed the State that he would appear in Delaware for Hughey's trial.

Approximately two weeks before the trial date, Westover had a telephone conversation with one of Hughey's attorneys in which they discussed the arrangements that the State had made for his appearance at the trial. Defense counsel explained to Westover that there was a proper method for subpoenaing an out-of-state witness, *see* 11 *Del.C.* § 3523, *supra* note 2, and that until he was properly subpoenaed, he had no legal obligation to appear at trial. Notwithstanding this advice, Westover drove to Delaware on July 30, the day before trial, and accompanied Hughey to defense counsel's office.

Defense counsel informed Westover that he was an essential witness for the State because he was the only person who could identify Hughey as the driver of the car. Counsel also mentioned that Hughey had a seventy-five percent chance of going to jail. Westover again questioned counsel about his legal obligations and asked whether or not he should appear for trial. Counsel told Westover that they were unable to advise him and recommended that he seek the advice of an independent attorney.[3]

According to Westover's unrefuted affidavit, the independent attorney advised him as follows: "[I]f I did not want to, I did not have to appear, and that I should conceal my whereabouts from everyone to be 'on the safe side.'"[4] Thereafter, Westover, without contacting the prosecutor or de-

the Superior Court should not hear arguments or rule on significant matters in chambers without a court reporter present to make a record. *See* Super.Ct.Civ.R. 43 and Super.Ct.Crim.R. 57, effective May 1, 1984. *See also Deputy v. State,* Del.Supr., 500 A.2d 581, 594 (1985); *Whalen v. State,* Del.Supr., 492 A.2d 552, 558 (1985); *Ross v. State,* Del.Supr., 482 A.2d 727, 734 (1984).

2. Section 3523(a) provides as follows:

§ 3523. **Testimony in this State.**
   (a) If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations commenced or about to commence in this State, is a material witness in a prosecution pending in a court of record in this State or in a grand jury investigation which has commenced or is about to commence, a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of

days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this State to assure his attendance in this State. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

3. Defense counsel gave Westover the names of three criminal lawyers who were not connected with the case. Counsel, however, did not know which attorney Westover selected or what advice he was given. Similarly, counsel did not see or communicate with Westover again until he ultimately testified on August 27.

4. Although Westover submitted the affidavit concerning his appearance at Hughey's trial to Superior Court, the Court did not receive it until after having denied Hughey's three pretrial motions to dismiss. Thus, the affidavit could not have been a basis for the Court's ruling nor is it a basis for our decision.

fense counsel, concealed his whereabouts and returned to his base in New York.

On July 31, 1984, a jury was drawn, impaneled, and sworn; however, the trial was continued until the following day because the State was unable to locate Westover. The prosecutor telephoned Westover's wife and found out that he was supposed to be in Delaware. The prosecutor also went to the residence where Westover had stated that he would be staying while in Delaware. Although unable to locate Westover, the State learned from the friend with whom Westover had been staying that he had returned to New York. Since the State was unable to establish a prima facie case without Westover's testimony, the Trial Court, *sua sponte*, declared a mistrial on August 2.

The Trial Court did so over Hughey's objection that jeopardy had attached. The Court's understanding of the law was that in a jury trial, jeopardy does not attach until the first witness is sworn and testimony begins. But the Court also invoked the principle of "manifest injustice," as grounds for relief from jeopardy if it had attached; and trial was rescheduled for late August.

Hughey then filed three pretrial motions to dismiss on the following grounds: (1) double jeopardy; (2) unnecessary delay; and (3) speedy trial—all of which were denied. As to double jeopardy, the Court reiterated its earlier bench ruling that under Delaware law, double jeopardy does not attach in a jury trial until after "not only the swearing of the jury but also the taking of evidence." Relying on *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); and *Fanning v. Superior Court*, Del.Supr., 320 A.2d 343 (1974), as supporting this result, the Court rejected defendant's claim of double jeopardy. The trial proceeded and on August 19, 1984, the jury found Hughey not guilty of

vehicular homicide second, but guilty of the lesser included offense of driving while under the influence of alcohol.

## I

On the issue of double jeopardy, defendant asserts a two-part argument: *one*, that because the Trial Court erred as a matter of law in holding that jeopardy had not attached, it could not have reached the issue of whether "manifest necessity" existed for the declaration of a mistrial; and *two*, that the State's negligent failure to subpoena an out-of-state witness in accordance with 11 *Del.C.* § 3523 precludes it from invoking "manifest necessity." The State responds that the Trial Court, after considering all the circumstances of the case, correctly ruled that "manifest necessity" existed for the declaration of a mistrial.

█ The double jeopardy clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const., amend. V.[5] The double jeopardy clause, however, does not preclude a defendant's retrial after jeopardy has attached if declaration of a mistrial is justified by a record showing of "manifest necessity." *Somerville, supra; Bailey v. State*, Del.Supr., 521 A.2d 1069, 1077 (1987).

█ Thus, when analyzing a claim that the double jeopardy clause has been violated, a court should apply a two-tier analysis: *first*, determine whether jeopardy attached in the first proceeding; and *second*, if jeopardy attached, whether "manifest necessity" required the declaration of a mistrial. If jeopardy did not attach in the first proceeding, the Fifth Amendment would not bar a defendant's retrial for the same offense and the court's inquiry would end with the first question. If, however, jeop-

---

5. The double jeopardy clause of the Delaware *Constitution* is virtually identical to the Fifth Amendment and is governed by federal double jeopardy standards. Del.Const., art. I, § 8; *Evans v. State*, Del.Supr., 445 A.2d 932, 933 (1982).

Therefore, the disposition of a state constitutional claim would be the same as a claim based upon the Fifth Amendment. *Bailey v. State*, Del.Supr., 521 A.2d 1069 (1987).

ardy did attach, the court must examine the particular facts and circumstances of each case to determine if "manifest necessity" required a mistrial. *Somerville, supra; Bailey, supra.*

■ Under settled federal as well as Delaware law, jeopardy attaches in a jury trial upon the jury's being impaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Tarr v. State,* Del. Supr., 486 A.2d 672 (1984). Therefore, the Trial Court misinterpreted both federal and state decisional law and erred, as a matter of law, in its bench rulings as to when jeopardy attaches in a jury trial. *See Crist, supra; Somerville, supra; Tarr, supra; Fanning, supra.* [6]

Under the facts of this case, jeopardy attached on July 31, 1984 when the jury was impaneled and sworn—all prior to the Trial Court's *sua sponte* declaration of a mistrial on August 2.

Having concluded that jeopardy had attached before the Trial Court's *sua sponte* ruling, we turn to the second question: whether the Trial Court abused its discretion in invoking the doctrine of "manifest necessity" to declare a mistrial and to permit defendant's retrial. The origins and application of this doctrine have been recently explored by this Court in *Bailey, supra* at 1074–1076. *See also United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). We quote from *Bailey:*

> In the absence of a motion by a defendant for a mistrial, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option to continue with the trial, until a scrupulous exercise of judicial discretion leads to the conclusion that the end of public justice would not be served by a continuation of the proceedings.

*Bailey, supra* at 1076. A trial court's determination *sua sponte* to invoke the doctrine of manifest necessity may not be set aside simply because the court may have failed to explicitly verbalize the precise words "manifest necessity" or to articulate on the record all the factors which support finding a deliberate exercise of discretion. *Arizona v. Washington,* 434 U.S. 497, 517, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1978); *Bailey, supra* at 1077. It is sufficient that the record supports the Court's action. *Arizona, supra.*

■ Here the record discloses that the Court invoked implicitly, if not explicitly,[7] the doctrine of "manifest necessity" to declare a mistrial in the interest of justice. *Arizona, supra.* From a review of the entire record, and applying the facts to the law, we conclude that we must sustain the Trial Court's *sua sponte* declaration of a mistrial although jeopardy had attached. *Bailey, supra* at 1076, 1077. Westover had volunteered to appear for trial and the State informed him, both by telephone and by letter, of the trial date. The State had also sent Westover a sheriff's subpoena in order for him to receive a permissive leave from the Air Force and had arranged to reimburse him for all of his travel expenses. Westover, however, who had driven to Delaware on the day before the trial, without contacting the prosecutor concealed his whereabouts and returned to New York. In addition, when the prosecutor called Westover's wife after he failed to appear as scheduled, she was under the belief that Westover was in Delaware. Thus, it appears that Westover's failure to appear was a complete surprise to the State.

Defendant asserts that the State's failure to ensure the appearance of an essential witness through use of proper proce-

---

**6.** We do not interpret *Fanning,* 320 A.2d at 344, as imposing the additional requirement that testimony has to be taken before jeopardy can attach in a jury trial. Rather, we construe *Fanning* as standing for the proposition that the particular defendants were placed in jeopardy when the jury was sworn. The fact that testimony was taken was irrelevant to the question of whether jeopardy had attached in the jury trial.

**7.** In addition to the Trial Court's judicial action form which notes "Miss trial [sic]—injustice if case was allowed to go forward at this time," defense counsel's August 15, 1984 letter memorandum to the Trial Court stated, "Your Honor did declare a mistrial, stating that it would be a manifest injustice not to continue the case."

dures to subpoena Westover does not constitute excusable neglect. We disagree under the facts of this case.

Were this a case in which the State had either willfully provoked a mistrial or exhibited "bad faith conduct," defendant's position would have support. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Bailey, supra* at 1078. In our view of the facts, the State's failure to subpoena the out-of-state witness Westover under section 3523 was at best excusable neglect and does not fall within the proscribed form of conduct set forth above.

■ Given the arrangements that the State made to ensure Westover's appearance and his evident cooperation with the State, we find its failure to properly subpoena this essential out-of-state witness to be regretable but, not the cause of the witness' failure to appear at trial. Clearly Westover traveled to Delaware intending to testify and then changed his mind, for reasons not apparent on this record, and went into hiding. Further, we decline to establish a hard-and-fast rule as a matter of law that the failure of a party to properly subpoena an out-of-state witness precludes the party from invoking the doctrine of "manifest necessity" after jeopardy has attached. *Downum, supra*.[8] Thus, Hughey's subsequent trial on August 27, 1984 did not violate his double jeopardy rights under the Fifth Amendment or under the Delaware Constitution, art. I § 8.

## II

Hughey next argues that the Trial Court abused its discretion by denying his motion to dismiss for unnecessary delay filed pursuant to Superior Court Criminal Rule 48(b). Hughey contends that because the State failed to properly subpoena Westover under 11 *Del.C.* § 3523, the reason for the trial delay was so unnecessary and inexcusable, the Court's denial of his motion was an abuse of discretion. The State counters that, absent a Sixth Amendment violation, no abuse of discretion may be found in the Court's denial of Hughey's Rule 48(b) motion, and then proceeds to argue that Hughey was not deprived of his right to a speedy trial.

■ The State is incorrect in its assertion that Rule 48's standards for relief are coextensive with the constitutional limitations of the Sixth Amendment. *See Fischer v. State*, Del.Supr., 285 A.2d 417, 418 (1971). Rule 48(b) serves a broader purpose and is not governed by established concepts of the speedy trial clause. *Fischer, supra; State v. Morris*, Del.Super., 340 A.2d 846, 850, *aff'd*, Del.Supr., 349 A.2d 748 (1975).

■ Rule 48(b) provides that "[i]f there is unnecessary delay in presenting a charge to a grand jury or in filing an information or in bringing a defendant to trial, the Court may dismiss the indictment, information or complaint." (underlining added for emphasis.) Thus, the application of Rule 48(b) lies within the sound discretion of the trial court. *Fischer, supra; Morris, supra*.

■ Under the circumstances of this case, we conclude that the Trial Court did not abuse its discretion in denying Hughey's Rule 48(b) motion to dismiss for unnecessary delay. As previously outlined, the State had made arrangements to ensure Westover's appearance at trial. Evidence also exists that defense counsel may have been partially responsible for Westover's failure to appear at trial.[9] Furthermore, the record does not sustain Hughey's claim of prejudice.[10]

---

**8.** Specifically, in *Downum*, the United States Supreme Court stated "[W]e refuse to say that the absence of a witness 'can never justify discontinuance of a trial.' Each case must turn on its facts." 372 U.S. at 737, 83 S.Ct. at 1035.

**9.** Delays attributable to the defendant are not chargeable to the State. *Latson v. State*, Del. Supr., 146 A.2d 597, 601 (1958).

**10.** "[S]ome showing of prejudice, ... is needed to justify the exercise of the Court's discretion in favor of a defendant to dismiss." *State v. Sharon H.*, Del.Super., 429 A.2d 1321, 1325 (1981).

Although Hughey analogizes the facts of *State v. Glaindez*, Del.Supr., 346 A.2d 156 (1975), to the facts of his case, *Glaindez* is distinguishable. In *Glaindez*, we affirmed the Superior Court's dismissal of a criminal indictment based upon the State's failure to secure the attendance of a vital witness. The State, however, had made no attempt to ascertain whether the witness had been served with the subpoena until the day before trial. *Id.* Hughey's case is inapposite since the State had made substantial efforts to secure Westover's appearance at trial. Hence, it was within the Trial Court's discretion to deny Hughey's Rule 48(b) motion.

### III

Hughey's final contention is that he was denied his right to a speedy trial under the Sixth Amendment to the United States Constitution.[11] Specifically, he contends that the ten-month period between his arrest on October 18, 1983 and his trial on August 27, 1984 violated his right to a speedy trial. We conclude that the Trial Court did not commit legal error or abuse its discretion in denying Hughey's motion to dismiss for violation of his Sixth Amendment right.[12]

■ A determination of the merits of a speedy trial claim is essentially a fact question requiring application of the balancing test established in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See Beebe v. State*, Del.Supr., 346 A.2d 169 (1975).

■ In *Barker*, the United States Supreme Court identified four factors to be considered in assessing whether a defendant's right to a speedy trial has been violated. *Id.* 407 U.S. at 530, 92 S.Ct. at 2192. They are: the length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* "The length of the delay is to some extent a triggering mechanism." *Id.* Hence, until there is some delay which is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance. *Id.*

■ In the instant case, Hughey's trial occurred within ten months of his arrest and six and a half months of his reindictment and express waiver of his right to a speedy trial. Under these circumstances, we find the length of the trial delay was not presumptively prejudicial or sufficient to trigger an inquiry into the remaining three *Barker* factors. *See also Tramill v. State*, Del.Supr., 425 A.2d 142, 143 (1980) (thirteen months not presumptively prejudicial); *Beebe, supra* (twelve months not presumptively prejudicial). Therefore, this is not a ground for reversal.

\*     \*     \*

Westover's affidavit statement that the independent attorney advised him to conceal his whereabouts to everyone to be "on the safe side" raises serious allegations concerning that attorney's ethical conduct. However, subsequent to oral argument of this case, the independent attorney directed to our Court an affidavit, now docketed in Superior Court, answering the allegations regarding his conduct. Additionally, some of the allegations in the attorney's unsolicited affidavit, if true, raise questions involving the ethical conduct of the trial prosecutor, who was not involved in the argument of this appeal, and of defense counsel. Since we are not in a position to judge the credibility of the participants in this case, which took over two years for anyone to be concerned about, following issuance of the mandate we will refer this matter,

---

**11.** The Sixth Amendment provides, in relevant part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial....

The Sixth Amendment's right to a speedy trial is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

**12.** Although Hughey does not raise his right to a speedy trial under Article I, section 7 of the Delaware Constitution, the analysis and disposition would be the same as his Sixth Amendment claim. *See Bailey, supra* at 1079; *Fensterer v. State*, Del.Supr., 493 A.2d 959, 964 (1985), *rev'd on other grounds*, — U.S. —, 106 S.Ct. 292, 88 L.Ed.2d 15 (1986).

including Westover's affidavit and the independent attorney's affidavit, to Disciplinary Counsel of the Board on Professional Responsibility for appropriate handling.

\* \* \*

Affirmed.