Alonzo SUDLER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: June 22, 1992.
Decided: Aug. 28, 1992.

Bernard J. O'Donnell, Office of Public Defender, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Dept. of Justice, Wilmington, for the State.

Before VEASEY, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court en Banc).

MOORE, Justice.

Alonzo Sudler ("Sudler") was convicted in the Superior Court of several drug-related offenses. He claims a deprivation of his right to trial by jury when the Superior Court discharged five jurors after his trial began, thereby reducing the panel below the constitutionally required number of twelve persons. The excusal of these jurors amounted to a *sua sponte* mistrial declaration by the trial judge. There was no finding that the mistrial was required by manifest necessity. Nor was the trial court's action requested by or agreed to by Sudler. The discharge of the jury without a finding of manifest necessity was an error of law requiring that the convictions be reversed. Under the circumstances the Double Jeopardy provisions of the United States and Delaware Constitutions bar retrial of the defendant on these charges.

I.

Sudler was charged with possession with intent to deliver cocaine and two related controlled substance offenses. He pleaded not guilty to all three counts of the indictment. Trial began in the Superior Court on Wednesday, April 11, 1990, and was expected to last two days. It took longer than anticipated and closing arguments were not

completed until 4:34 p.m. on Thursday, April 12, 1990. Because the next day was Good Friday, a legal holiday, the trial judge engaged in the following colloquies with the jury:

We do not like to instruct you on the law, then have a prolonged recess before you begin your deliberations.

Next week is a holiday week for some people or for children of some people. And is there any juror who has a planned holiday, either personal or family members such as a child, next week?

If so, raise your hand.

One juror. Two jurors.

Monday of next week. Anybody on Monday of next week for the holiday?

All next week?

Do any jurors have any vacation plans for tomorrow? If so, please raise your hand.

One juror. Two. Three.

I was afraid of this.

May I see counsel, please?

(Side bar not reported)

THE COURT: How many jurors have vacation plans next week?

Three.

(Side bar continuing unreported)

\* \* \* \* \* \*

THE COURT: Do any—those of you who do not have any personal or vacation conflicts which would prevent you from coming in Monday morning. In other words, any of you who would be able to come in Monday morning, would you please raise your hand?

One, two, three, four, five, six, seven. Okay.

\* \* \* \* \* \*

—apparently there are seven jurors who would be able to appear here on Monday morning to conclude this case, the seven who raised their hands just now. Is that correct?

All right. Therefore, that's what we'll do. *This jury will now become a jury of seven persons.*

*The five of you who are unable to return on Monday, are excused from further participation in this case.*

(Emphasis added).

In addition to those noted above, there were other unrecorded sidebar conferences held in connection with these inquiries.

On that inadequate record the trial judge discharged five jurors.[1] The court attempted to put what had transpired on the record only after these jurors were excused. Sudler's counsel stated that over the holiday weekend his client would like to think about trial by a jury of seven people. The court then gave Sudler the holiday weekend to consider three alternatives: "mistrial, panel [of] seven [jurors], [or] a judicial decision without jury involvement."

On Monday, April 16, 1990, eight, rather than seven, jurors returned to begin deliberations.[2] Sudler's counsel informed the court that his client was willing to "waive the jury in lieu of the fact that we don't have a full jury." The court then queried Sudler about the waiver, and immediately thereafter found him guilty of all three charges.

On appeal, after supplemental briefing on the issue of manifest necessity and waiver, and after oral argument, the case was remanded for purposes of enlarging the record. Specifically, we asked the trial court to attempt to reconstruct the record of the unrecorded sidebar conferences. *See Sudler v. State*, Del.Supr., No. 349, 1990, Horsey, J. (Oct. 25, 1991) (ORDER).

On remand, the trial court conducted a hearing but was unable, in its words, "to fill in the void" left by the unrecorded sidebar conferences. *Sudler v. State*, No. 349, 1990, Herlihy, J., Letter to Justice Horsey on Return from Remand at 3 (Dec. 17, 1991) (hereinafter "Return from Re-

1. The two alternates on the jury had already replaced two members of the original jury when this issue arose.

2. *Apparently*, one of the jurors, who had been discharged on Thursday, showed up to continue participating in the trial. How a dismissed juror can return to the panel is, to say the least, baffling. *Compare Claudio v. State*, Del.Supr., 585 A.2d 1278, 1289–1305 (1991).

mand"). The court found that there was "no precise record of what counsel agreed to concerning the excusal of jurors and [the] waiver of trial by jury." *Id.* at 4. Significantly, the trial court concluded that "there had been no waiver of trial by jury or of trial by less than twelve as of the end of business on [Thursday], April 12, 1991 (sic)." *Id.* at 3.[3]

Thereafter, we ordered further supplemental briefing on the issue of double jeopardy, and the case was submitted for decision *en banc*.

## II.

### A.

Once again we observe that effective appellate review has been hampered by the Superior Court's failure to record sidebar conferences. There were no fewer than five unrecorded sidebar conferences noted in the trial transcript, all of which apparently dealt with the issues before us. We have repeatedly stated that all sidebar conferences, except those involving non-substantive issues, *must* be recorded. *See, e.g., In re Butler*, Del.Supr., 609 A.2d 1080, 1082–83 n. 3 (1992); *Ross v. State*, Del. Supr., 482 A.2d 727, 734–735 (1984). This requirement allows no room for discretion. It also is mandated by Superior Court Criminal Rule 26.1.

■ We cannot accept the explanation in the Return from Remand that the initial sidebar conference need not have been recorded "because the topic was going to be scheduling and presumably nothing substantive was to be discussed." *Sudler*, Return from Remand at 2. The topics under discussion were more than mere "scheduling," since they involved the effects of delay upon the jurors' deliberations, and most significantly, the availability of all jurors on the following Monday and what the trial judge proposed to do about it. Interestingly, the trial court noted that, if Sudler's counsel had objected to the excusal of any jurors during an unrecorded sidebar conference, the trial judge "would have repeated it [the objection] for the record when [he] summarized the sidebar conferences *after the jury was excused.*" *Id.* (emphasis added). This demonstrates a fundamental misunderstanding of the aforementioned rule. It is inappropriate to recreate sidebar conferences *ex post facto*, particularly after the trial judge has taken irrevocable steps, related to or resulting from sidebar conferences, that effectively violated a fundamental right of the defendant.

### B.

■ Sudler contends that the excusal of five jurors was not required by manifest necessity, and deprived him of his constitutional right to a jury trial. Clearly, he never consented to the excusal of the jurors. His later "waiver" was meaningless. His right to a jury trial had already been denied by the excusal of the jurors. The limited alternatives afforded him by the trial judge—a "mistrial," if it was sought by Sudler, trial by seven jurors, or a bench trial—only compounded the deprivation.

It is undisputed that in criminal cases a defendant's right to a jury trial is guaranteed by both the Federal and State Constitutions. *See Duncan v. Louisiana*, 391 U.S. 145, 148–54, 88 S.Ct. 1444, 1446–50, 20 L.Ed.2d 491 (1968) (federal constitutional right to trial by jury is applicable to states through Fourteenth Amendment); *Claudio v. State*, Del.Supr., 585 A.2d 1278, 1289 (1991) (citing Del. Const. art. I, §§ 4, 7). A defendant may, however, intelligently and voluntarily waive this right. Super.Ct.Crim.R. 23(a); *Polk v. State*, Del. Supr., 567 A.2d 1290, 1294 (1989). Finally, every criminal defendant has a valued right to have this right protected "through scrupulous exercise of judicial discretion." *Fanning v. Superior Court*, Del.Supr., 320 A.2d 343, 345 (1974).

Unfortunately, the excusal of five jurors under the facts here was both an abuse of

---

**3.** Sudler's trial actually took place on April 11–12, 1990. This is significant in view of the issues presented.

judicial discretion and a plain error of law. The record demonstrates that the trial court's inquiry of each juror about his or her availability after the holiday weekend was superficial at best. The trial judge never asked each of the five jurors to specify the nature of their individual conflicts. In addition, no inquiry was made of the jurors' availability to continue deliberations after 5:00 p.m. that day.[4]

■ When the trial court discharged the five jurors, Sudler had not waived his right to trial by jury of twelve persons. The Superior Court so concluded on remand. *See Sudler*, Return from Remand at 3. The State responds that Sudler's waiver of trial by jury on Monday, April 16, 1990, after the holiday weekend, was valid. We disagree. By Monday, Sudler had nothing to waive because his jury trial had been effectively concluded on Thursday.

What the court offered Sudler the following Monday was irrelevant and illusory. It could not ameliorate the deprivation that had already occurred. It was a fundamental and plain error that could not be redeemed.

Thus, when the five jurors were discharged on April 12, 1990, the trial court erred as a matter of law because it did so not only on an inadequate record, but without Sudler's consent or a finding of manifest necessity. This effectively caused a mistrial *sua sponte* on April 12, 1990.[5] Any subsequent actions taken by the trial court could not cure the effects of that unfortunate decision. Accordingly, we are constrained to reverse Sudler's convictions.

### III.

■ This leads to the question whether Sudler can be retried for the same offenses consistent with the protection against double jeopardy.[6] *See* U.S. Const. amend. V; *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Del. Const. art. I, § 8; *Claudio*, 585 A.2d at 1278; *see also Bailey v. State*, Del.Supr., 521 A.2d 1069, 1074–75 (1987). The general rule is that a defendant can be retried for the same offense when he or she has won a reversal of a conviction on appeal. *Id.* at 1075 (citations omitted). The rule is different, however, when the proceedings are stopped by the trial court, *sua sponte*, prior to verdict. Although Sudler's trial did continue to a verdict, we find that the general rule permitting retrial is inapplicable due to our conclusion that the trial court effectively declared a mistrial *sua sponte* by discharging the five jurors on such an insubstantial record.

On the other hand, a defendant's motion for mistrial, when granted, generally removes any barrier to reprosecution. *Oregon v. Kennedy*, 456 U.S. 667, 672–73, 102 S.Ct. 2083, 2087–88, 72 L.Ed.2d 416 (1982). There is, however, a narrow exception to that rule. Where "the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial ... a defendant [can] raise the bar of double jeopardy to a second trial after having suc-

---

4. The Court is especially troubled that it now appears that the trial judge's lack of inquiry was due, at least in part, to his own personal commitments that day, and not those of the jurors.

5. A mistrial is generally defined as:

   An erroneous, invalid, or nugatory trial. A trial of an action which cannot stand in law because of want of jurisdiction, or a wrong drawing of jurors, or disregard of some other fundamental requisite before or during trial. Trial which has been terminated prior to its normal conclusion. The judge may declare a mistrial because of some extraordinary event (e.g. death of juror, or attorney), for prejudicial error that cannot be corrected at trial, or because of a deadlocked jury.
   BLACK'S LAW DICTIONARY 712 (6th ed. 1990).

6. The language of the Delaware Constitution parallels the federal provision. It provides:

   "[N]o person shall be for the same offense twice put in jeopardy of life or limb ..." Del. Const. art. I, § 8. Although we have previously observed that the federal and state double jeopardy provisions are similar, we have not yet been required to determine whether they are identical in scope in all respects. *See Evans v. State*, Del.Supr., 445 A.2d 932, 933 (1982); *Hunter v. State*, Del.Supr., 420 A.2d 119, 124 & 130 n. 6 (1980); *State v. Heitter*, Del.Supr., 203 A.2d 69, 71 (1964). This case does not require us to make that determination either. For convenience, therefore, this opinion will generally refer to both federal and state constitutional provisions as the Double Jeopardy Clause.

ceeded in aborting the first on his own motion." *Id.* at 676, 102 S.Ct. at 2089. The State contends that because any mistrial which did occur was not due to any bad faith governmental conduct, retrial of Sudler is not barred by double jeopardy. That is incorrect.

The standard established in *Oregon v. Kennedy* is only applicable where the defendant himself requests, and is granted, a mistrial. That is not the case here. Sudler never requested a mistrial. The trial court's offering of a mistrial to Sudler is quite different from Sudler requesting one. The mere offering of a mistrial, as in this case, after the court induced error effectively causing the mistrial, does not vitiate the prior fundamental error and implicate the bad faith test of *Oregon v. Kennedy.*

Having concluded that the trial court effectively declared a mistrial *sua sponte,* our standard of appellate review is "manifest necessity." *Hughey v. State,* Del. Supr., 522 A.2d 335, 339 (1987); *Bailey,* 521 A.2d at 1075. The "doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option to continue with trial, until a scrupulous exercise of judicial discretion leads to the conclusion that the end of public justice would not be served by a continuation of proceedings." *Id.* at 1076 (citing *United States v. Perez,* 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824).

The *Perez* case has been consistently applied by the United States Supreme Court as the standard of appellate review for testing the trial judge's exercise of discretion in declaring a mistrial without the defendant's consent. *Jorn,* 400 U.S. at 481, 91 S.Ct. at 555. In *Perez,* the Court held that the trial judge's discretionary power, originating from the common law,[7] to discharge a jury from giving a verdict should be used "with great caution, under urgent circumstances, and for very plain and obvious reasons." This Court has observed that a trial judge's "determination *sua sponte* to invoke the doctrine of manifest

necessity may not be set aside simply because the court may have failed to explicitly verbalize the precise words 'manifest necessity' or to articulate on the record all of the facts which support finding a deliberate exercise of discretion." *Hughey,* 522 A.2d at 339 (citing *Arizona v. Washington,* 434 U.S. 497, 517, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1978) and *Bailey* at 1077).

However, the record here conclusively demonstrates that the trial court's actions were not manifestly necessary. The trial judge merely inquired as to which jurors would be "unable to return on Monday," and excused, without any further inquiry, those jurors who raised their hands. *Cf. Celotex Corp. v. Wilson,* Del.Supr., 607 A.2d 1223, 1228 (1992) (*ex parte* response to single question without specific judicial finding as to undue hardship, extreme inconvenience, or public necessity was contrary to Delaware Jury Act). There was no adequate finding of manifest necessity for the excusal of the jurors. *Cf. Bailey,* 521 A.2d at 1075–78 (trial court's *sua sponte* declaration of mistrial upon learning of jurors' exposure to defendant's prior trial constituted manifest necessity allowing retrial of defendant consistent with double jeopardy). Accordingly, the record reflects that the trial judge abused his discretion in discharging the five jurors without Sudler's consent. *Accord Jorn,* 400 U.S. at 486, 91 S.Ct. at 557. Under the circumstances, jeopardy has attached and bars Sudler's retrial on these charges. *See* U.S. Const. amend V; *Jorn,* 400 U.S. at 470, 91 S.Ct. at 549; Del. Const. art. I §§ 4, 8; *Claudio,* Del.Supr., 585 A.2d at 1278 (Delaware Constitution guarantees common law right to trial by jury).

\* \* \*

The judgments are REVERSED.

---

**7.** The Delaware Constitution guarantees the right to trial by jury as it existed at common law. *Claudio,* 585 A.2d at 1278.