**Joel DAVIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 92–CF–1575.

District of Columbia Court of Appeals.

Argued June 17, 1993.

Decided Aug. 9, 1993.

Howard F. Bramson, appointed by this court, for appellant.

Laura Cordero, Asst. U.S. Atty., for appellee. Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, and Steven J. Durham, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

In this expedited appeal, appellant Joel Davis contends that the trial judge erred in granting a mistrial for manifest necessity and ordering defense counsel to disclose privileged information, and in denying his motion to dismiss on the ground of double jeopardy. We affirm.

## I.

Appellant went to trial on December 3, 1992, on charges of assault with intent to kill while armed, D.C.Code §§ 22–501, –3202 and mayhem while armed, *id.* §§ 22–506, –3202 (Repl.1989). The complainant, Brian Watson, the only witness to his stabbing, testified on direct examination that after having spent the afternoon of March 16, 1991 drinking vodka, he attended a "disco" party at the business place of appellant's grandfather. Watson had previously been fired from a position in this business. The night of March 16th, he assisted the disc jockeys in loading and unloading their music equipment. Later, after helping to reload the equipment, Watson was approached by appellant, who accused Watson of stealing a battery from one of appellant's grandfather's catering vans. When Watson denied this, appellant responded "well, I know you took the battery, and I'm going to fuck you up." Appellant turned away from Watson and then he turned back, stabbed Watson in the abdomen, and ran. Watson, with the knife still in his body, crossed the street and dialed 911 for an ambulance. He testified that he does not normally carry weapons, and that he had none on him that evening. After the direct testimony, the trial judge recessed the trial for lunch, with the cross-examination to begin after the recess.

When court resumed after lunch, Watson, who had been under government subpoena for the trial, could not be found. The prosecutor suggested to the trial judge that the reason for the witness' absence might be that defense counsel had informed him, during the recess, of an outstanding bench warrant for his arrest. The prosecutor explained that she had not known of the bench warrant until after lunch when defense counsel had informed her of it. In response to the trial judge's question to defense counsel as to whether he had told Watson about the warrant,

defense counsel stated that any conversation he had with Watson was protected as attorney work-product. The trial judge disagreed and ordered defense counsel to inform the court of what he had said to the witness. Defense counsel told the judge that he had "told [Watson] that I knew he had a bench warrant on a pending case and asked him if he wanted to discuss that case with me." Defense counsel stated that Watson did not respond, walked away, and then returned to ask him a question that he did not remember. The prosecutor advised the judge that police officers had told her that defense counsel "seemed to be following" Watson during lunch. Defense counsel denied this, stating he had only one conversation with the witness. The trial judge issued a bench warrant for Watson and continued the case until December 9, 1992.

On December 9th, despite the efforts of the United States Marshal Service, Watson did not appear in court. The prosecutor proffered that Watson had told the police that "he was being followed and harassed by the defense counsel." The prosecutor also stated that Watson had told her that defense counsel was trying to speak to him and that she had informed him that he could speak to counsel but was not required to do so. The judge continued the trial until December 14, 1992.

On December 14, 1992, Watson was still at large despite, according to the prosecutor's proffer, repeated efforts by the marshals to locate him. The trial judge dismissed the jury. The prosecutor asked the judge to declare a mistrial for manifest necessity since Watson had been subpoenaed for trial, his absence was not the fault of the government, his failure to appear was unexpected and arose after the begin-

ning of trial, and Watson was an essential witness needed to prove the identity of the assailant. Defense counsel argued that the government had been negligent in not discovering and disclosing the information about Watson's bench warrant.[1]

Further, defense counsel maintained that his conduct had been entirely proper. He stated that he had gone to the records room, discovered the outstanding bench warrant, and had then informed the trial judge's law clerk of its existence. Following that, he had approached Watson to confirm that the bench warrant continued to be outstanding since, he proffered, court jackets are often out of date. Defense counsel was of the view that Watson would be the person best informed on whether the warrant remained outstanding. Over objection, in response to the trial judge's questions, defense counsel repeated the nature of his conversation with the witness.

The trial judge granted the government's motion for a mistrial on the ground of manifest necessity. The judge found that Watson was an essential government witness, he was unavailable, his unavailability was unexpected and not caused by the government, and that defense counsel, rather than informing the court, the police, or the prosecutor, took a course of action that he must have known was likely to make the witness flee and that "[i]t was this action, on the part of defense counsel, that precipitated Mr. Watson's flight." The judge denied appellant's motion to dismiss the indictment on the grounds of double jeopardy, and advised that he would set a new trial date.[2]

## II.

■■■ Since jeopardy had attached at the time the mistrial was granted,[3] appel-

---

1. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The prosecutor advised that she had run Watson's record on May 19, 1992, disclosed all relevant information to the defense and had been unaware of any pending charges against Watson. The bench warrant was issued July 24, 1992.

2. In response to defense counsel's request, after indicating that the defense would appeal, the judge set a status date instead; a trial date

would be set if there was no appeal. The government raises no question regarding the jurisdiction of this court to entertain this appeal even though a new prosecution had not commenced at the time that the appeal was noted.

3. Jeopardy attaches once the jury is selected and sworn. *Routh v. United States,* 483 A.2d 638, 642 (D.C.1984).

lant's "valued right to have his trial completed by a particular tribunal" was implicated. *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). That right, however, is not absolute as it "is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id.* 434 U.S. at 505, 98 S.Ct. at 830. The prosecutor can overcome appellant's right to completion of the trial by a particular tribunal by showing "manifest necessity." *Id.*

 Not all circumstances involving unavailability of a witness will suffice. *See Downum v. United States*, 372 U.S. 734, 737, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963). *See id.* at 736, 83 S.Ct. at 1034 ("[t]he discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances'") (quoting *United States v. Coolidge*, 25 F.Cas. 622, 623 (C.C.D.Mass.1813) (No. 14,857)). This court has made clear that in order to demonstrate "manifest necessity," the government must show that the missing witness' testimony is essential to the government's case. *Routh, supra* note 3, 483 A.2d at 643. The court exercises "the strictest scrutiny" in determining whether the trial court properly exercised its discretion in our review of the grant of a mistrial for manifest necessity because a critical government witness is unavailable. *Id.* at 642 (quoting *Arizona v. Washington*, 434 U.S. at 508, 98 S.Ct. at 831); *see also Douglas v. United States*, 488 A.2d 121, 133 (D.C. 1985) (level of deference will depend on the problem facing the trial court and the court "ordinarily will accept a trial judge's determination that there is a 'high degree of necessity' for a mistrial, without a less drastic alternative, as long as that determination is reasonable") (citations omitted).

Watson's testimony was clearly essential to the government's case. Watson, the complaining witness, was the only person who could identify appellant as the person who stabbed him. Moreover, without Watson present for cross-examination, the police radio runs and Watson's call to 911, which contained reports of Watson's identification of his assailant, were inadmissable hearsay. *See Yelverton v. United States*, 606 A.2d 181, 183–84 (D.C.1992). The defense refused to stipulate the identity of the assailant. The prosecutor expected appellant to raise an alibi defense.

In addition, the record supports the judge's finding that Watson's non-appearance was unexpected. Watson was under government subpoena in the instant case and he had, with one exception involving hospitalization, always appeared at previous trial dates and witness conferences. Despite efforts by the marshals to locate him, Watson remained at large after a week. Furthermore, his disappearance occurred during the trial, after he had testified on direct examination. Finally, the trial prosecutor did not have actual knowledge of the outstanding bench warrant until after Watson's direct testimony.

 Hence, the principal issue raised by appellant is whether the judge erred in finding that the witness' non-appearance was not attributable to the government.[4] Appellant correctly points out that the government, as an entity, knew of the outstanding bench warrant and that the prosecutor had a continuing duty to disclose that information.[5] While we agree that the prosecutor should have discovered the outstanding warrant and informed the trial court, the trial judge could also properly find that action by defense counsel was the immediate cause of the witness' non-appearance. It is true, as appellant argues, that if the prosecutor had known about the outstanding warrant and informed the trial judge, the warrant could have been executed and the witness would not have disap-

---

4. The judge stated:

 I rule that there was no active conduct on the part of the government that played any part in the witness' non-appearance. I find that there was an active part on the part of the

defense counsel that played a part in the witness' non-appearance.

5. *See supra* note 1.

peared. But it does not follow that the reason for Watson's non-appearance after the trial had recessed was the prosecutor's failure to learn of the outstanding warrant.

The record indicates that defense counsel spoke to Watson about the outstanding warrant twenty minutes before trial was scheduled to resume. As the trial judge commented, since defense counsel spoke to the witness immediately after alerting the judge's chambers, there was no time for the trial court to have the warrant executed before the witness disappeared. Prior to that time, the witness had given no indication that he would not appear to testify at appellant's trial. It was also clear that twenty minutes before the trial was scheduled to resume the witness was still at the courthouse. The trial judge observed that even if defense counsel did not intend the result, by speaking to the witness about the outstanding bench warrant, "it was such an obvious—and anticipatory result [for the witness to disappear] that you have played a part on behalf of your client in the witness' non-appearance." Defense counsel's contention that it was necessary for him to check with Watson to verify the existence of the bench warrant prior to beginning his cross-examination was not accepted by the trial judge and is also unpersuasive here. Even assuming, as defense counsel claimed, that the trial court's case jacket is not a reliable means of determining whether or not a bench warrant is still in effect, there is no basis for the court to reject the trial judge's conclusion that defense counsel could reasonably foresee the likely effect of his questioning of the witness about the outstanding warrant.[6]

Under these circumstances, the trial judge's finding that defense counsel, and not the government, was responsible for the non-appearance of the witness after the lunch recess is supported by the record evidence. While the prosecutor's lack of information was regrettable, that circumstance was not the immediate cause of Watson's failure to appear after the lunch recess. *See also Hughey v. State*, 522 A.2d 335, 340 (Del.Super.Ct.1987) (government's "failure to properly subpoena this essential out-of-state witness regretable (sic) but not the cause of the witness' failure to appear at trial").

▮ Finally, appellant's contention that the trial judge erred in ordering defense counsel to reveal what he had said to the witness because the conversation was protected as attorney work-product is ultimately unpersuasive. We will assume that defense counsel's conversation with the witness was in the nature of work-product. *See Parks v. United States*, 451 A.2d 591, 607–08 (D.C.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983). The trial judge directed defense counsel to reveal the question that he had asked the witness regarding the bench warrant and the witness' reply and to advise the trial court whether defense counsel had seen the trial court record containing the bench warrant. In the witness' absence, defense counsel was the only available source to the trial judge. Since the judge was initially inquiring for the purpose of determining the reason for the witness' absence, and later for the purpose of determining whether or not to sustain defense counsel's objection to the government's motion for a mistrial, we conclude that the limited inquiry and limited response fell within the equivalent of a "substantial need" exception to the privileged documents rule for "fact work product" as between parties.[7] *See*

---

**6.** In concluding that the trial judge did not abuse his discretion, there need not, as appellant argues on appeal, also be a valid finding of wrongdoing or unethical conduct by defense counsel, and we imply no such finding in the disposition of this appeal. Our holding is a narrow one.

**7.** Mr. Bramson: [I t]old him that I knew he had a bench warrant on a pending case and asked him if he wanted to discuss the case with me.

The Court: And what was his reply?
Mr. Bramson: He gave no reply. He walked away. Then he came back to me and started to ask me another question. I'm not exactly sure what it was. And I said, "I only wanted to ask you about that one issue. I'm not going to talk to you about anything else."

*id.* at 608 ("party seeking access must show that he or she has a 'substantial need' for the ['fact work product'] material and 'is unable without undue hardship to obtain the substantial equivalent of the material by other means'") (citing FED.R.CIV.P. 26(b)(3)).

Accordingly, we affirm the order granting the mistrial on the ground of manifest necessity and denying appellant's motion to dismiss the indictment on the ground of double jeopardy.

TERRY, Associate Judge, concurring:

I agree that the trial court's order should be affirmed, and I join without hesitation in the opinion of the court, except for footnote 6. With all respect, I think my colleagues deal too gently with defense counsel.

The record before us plainly shows—to me, at least—that it was defense counsel who actively procured the sudden absence of the complaining witness. Given the facts of the case, the most reasonable inference is that counsel's pursuit of Mr. Watson through the hallways of the courthouse and his conversation with him about the outstanding bench warrant were part of a calculated maneuver to intimidate or frighten Mr. Watson into disappearing. That this maneuver was successful resulted in the mistrial, which I agree was based on manifest necessity. The blame for the mistrial lies squarely on defense counsel and no one else. I agree with my colleagues that there is no need for a formal finding of wrongdoing or unethical conduct on counsel's part. Nevertheless, I think defense counsel's conduct was outrageous, and I am not willing to let him off the hook without at least a few words of disapproval.