**Kenneth SWANSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 564, 2007.

Supreme Court of Delaware.

Submitted: June 25, 2008.

Decided: Sept. 16, 2008.

Nicole M. Walker, Esquire (argued) and Bernard J. O'Donnell, Esquire, Office of Public Defender, Wilmington, DE, for Appellant.

Gregory E. Smith, Esquire, Department of Justice, Wilmington, DE, for Appellee.

BERGER, Justice:

■ In this appeal we consider whether the trial court erred in declaring a mistrial after a defense witness asserted her Fifth Amendment right against self-incrimination. We find that there was no manifest necessity to grant a mistrial. The witness's invocation of her Fifth Amendment right did not preclude *all* cross-examination, and the right to confront witnesses does not guarantee a complete and successful confrontation. Because the mistrial was granted over appellant's objection and was not based on manifest necessity, the double jeopardy clause bars a retrial on these charges. Accordingly, appellant's conviction must be vacated.

### FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Swanson was arrested at the home of his girlfriend, Stacy Moody, where the police found two loaded shotguns, ammunition, marijuana and drug paraphernalia in the house. Swanson gave a statement admitting that the guns were his after the police warned him that Moody could lose her home and custody of her two children if the weapons were found to

be hers. Swanson was indicted on two counts of possession of a deadly weapon by a person prohibited and other weapons and drug offenses. At his first trial, in 2006, the State subpoenaed Moody, but did not call her as a witness. Instead, Moody voluntarily testified for the defense, claiming that the two shotguns belonged to her and that she bought them for self defense. Moody testified that normally she kept the guns in the basement, where the children would not get at them, but that on the day of the arrest, she had taken one gun upstairs because she was planning on selling it. She also said that Swanson did not know she had the weapons and only stayed at her house occasionally. Finally, Moody testified that the place outside her apartment where the police found the drug paraphernalia was accessible to the general public.

After Swanson had asked a range of questions that were potentially incriminating, Swanson asked Moody whether she realized that her testimony could have legal consequences. When Moody replied, "Yes," the trial court stopped the examination to discuss with counsel how to protect Moody's rights. The trial court expressed concern that Moody could be charged with endangering the welfare of her children, since she had two loaded shotguns in her house and at least one of them was accessible to the children. Swanson assured the court that Moody was aware of her rights and had discussed the situation with four attorneys. Nonetheless, the trial court decided that Moody should have an opportunity to consult with an independent attorney. After the consultation, Moody's attorney told the court that, on his advice, Moody would invoke her Fifth Amendment right and refuse to answer any additional questions that might expose her to criminal liability.

At that point the State moved for a mistrial, over Swanson's objection. The court ruled: "I think I'm going to charge it to the defense, the mistrial to the defense." The trial court did not request a proffer from the State to determine the questions Moody would be asked on cross-examination. Following another mistrial, Swanson was convicted of the weapons and ammunition charges in his third trial, but was acquitted of the child endangerment and drug related charges. Moody testified in that trial.

## DISCUSSION

■ The sole issue on appeal is whether the first mistrial was required by "manifest necessity."[1] As this Court explained in *Bailey v. State*,[2]

> The Double Jeopardy provisions of the State and Federal Constitutions represent a policy of finality for the benefit of the defendant in criminal proceedings.... The question remains, however, in what circumstances is a retrial to be precluded when the prior trial is aborted prior to the verdict.
>
> * * * *
>
> ■ The standard of appellate review for testing the trial judge's exercise of his discretion in declaring a mistrial in the absence of a defense motion is "manifest necessity."... [The] doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option to continue with the trial until a scrupulous exercise of judicial discretion leads to the conclusion that the end of public justice would not be served by a continuation of the proceedings.

1. *Hughey v. State*, 522 A.2d 335, 338 (Del. 1987).

2. 521 A.2d 1069, 1075–76 (Del.1987).

Stated another way, the power to grant a mistrial should "be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes...."[3]

■ The trial court failed to establish that a mistrial was manifestly necessary. It based its finding on Moody's decision to invoke her Fifth Amendment privilege against self-incrimination after being questioned by Swanson. The court decided that Moody had not waived her constitutional right, and apparently concluded that the State would be unable cross-examine Moody *at all.* That conclusion was wrong. A witness may invoke her Fifth Amendment privilege if her refusal to testify is "grounded on a reasonable fear of danger of prosecution ...."[4] But "a witness cannot meet the reasonable-fear-of-prosecution prong by simply making a blanket assertion of the privilege...."[5]

■ Before granting a mistrial on the basis of manifest necessity, a trial court must "scrupulously consider[ ] available alternatives and [find] all wanting...."[6] Although a trial judge's "determination *sua sponte* to invoke the doctrine of manifest necessity may not be set aside simply because the court may have failed to explicitly verbalize the precise words 'manifest necessity,'" a "deliberate exercise of discretion" is required.[7]

Here, Moody had already testified that she owned the two weapons, and that she bought them for protection from someone she could not identify. Since she was not a person prohibited from owning a gun, her possession of the two weapons was not illegal. Thus, she would not be incriminating herself if she were cross-examined about the circumstances surrounding her purchase; her choice of weapons; her ability to use the weapons; etc. Such a cross-examination might have effectively demonstrated that the weapons were not hers. To protect Moody from incriminating herself on possible charges of endangering the welfare of her children, the trial court could have supervised the scope of the questioning and allowed her to invoke the privilege where appropriate.

The trial court did not explore this option, or any others, before declaring the mistrial. The court did not ask the State to make a proffer of the questions it intended to ask on cross-examination; it did not consider instructing the jury to disregard Moody's testimony; it did not ask whether the State would grant Moody immunity (the State obviously did not think Moody owned the guns, since it charged Swanson with the crimes); and it did not solicit other possible solutions from either party. From this record we must conclude that the trial court abused its discretion by finding manifest necessity without first exploring the alternatives to a mistrial.[8]

3. *U.S. v. Perez,* 22 U.S. 579, 580, 6 L.Ed. 165 (1824).

4. *U.S. v. Gaitan–Acevedo,* 148 F.3d 577, 588 (6th Cir.1998), citing *United States v. Damiano,* 579 F.2d 1001, 1003 (6th Cir.1978); *Brown v. Cain,* 104 F.3d 744, 749 (5th Cir. 1997).

5. *U.S. v. Gibbs,* 182 F.3d 408, 431 (6th Cir. 1999).

6. *Bailey v. State,* 521 A.2d at 1076 (Citation omitted.).

7. *Sudler v. State,* 611 A.2d 945 (Del.1992), citing *Hughey,* 522 A.2d at 339; *Arizona v. Washington,* 434 U.S. 497, 517, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

8. *See e.g. Sudler,* 611 A.2d at 948 (finding abuse of discretion where a trial court excused jurors and caused a mistrial based on juror's unavailability the following Monday without making any further scheduling inquiries).

## CONCLUSION

Based on the foregoing, the judgment of the Superior Court is reversed and this matter is remanded with instructions that the trial court vacate Swanson's convictions. Jurisdiction is not retained.