Dechanta KNOX, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 685, 2010.

Supreme Court of Delaware.

Submitted: Sept. 14, 2011.
Decided: Oct. 07, 2011.

---

**58.** Hearing Officer Decision at 7, 11.

**59.** *Jain v. Del. Dept. of Health & Soc. Servs.,* 2010 WL 4513438, at *3 (Del.Super.Ct. Oct. 29, 2010).

Nicole M. Walker (argued) of the Office of the Public Defender, for appellant.

Kevin M. Carroll (argued) and Gregory E. Smith of the Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice:

■ Police arrested Dechanta Knox on August 5, 2008 and charged her with three counts of issuing a bad check greater than $1,000. After a jury convicted Knox of all offenses, the trial judge learned that Juror No. 8 was a victim in a pending criminal trial being prosecuted by the same Deputy Attorney General. Without examining the juror in court, the trial judge denied Knox's motion for a new trial. When a juror serving on a criminal trial is an alleged victim of a crime and is contemporaneously represented by the Attorney General's office in the prosecution of the alleged perpetrator of the crime against the juror "victim," a mere inquiry by deposition into whether the jury knew the prosecutor or anyone in his office insufficiently probes the ability of that "juror/victim" to render a fair and objective verdict as a matter of law. Therefore, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2008, a grand jury indicted Dechanta Knox on three counts of issuing a bad check greater than $1,000. Jury selection for the trial began on March 17, 2009. During *voir dire*, the trial judge directed the following question to the potential jurors: "The State is represented by Kevin M. Carroll, a Deputy Attorney

General, and the defendant is represented by Raymond D. Armstrong. Do you know the attorneys in this case or any other attorney or employee in the office of the Attorney General or the defense counsel?" None of the potential jurors, including Juror No. 8, responded positively.

The trial judge did not ask whether any of the venire members were victims of a crime, and the parties did not uncover Juror No. 8's status as an alleged victim in a pending criminal trial during *voir dire*. As a result, the judge seated Juror No. 8. On March 18, 2009 the jury convicted Knox of all three charges. Five days after Knox's convictions, Deputy Attorney General Carroll spoke with Juror No. 8 to discuss the juror's pending criminal trial. When they met face to face on March 25, 2009, Carroll realized that the victim had been one of the jurors in *Knox*. Carroll immediately notified the judge of his connection with the juror and withdrew from the pending case.

Further investigation revealed that Nickolas Dawkins–McMillian robbed Juror No. 8 in 2008. Soon after the incident, the Department of Justice Victim Services Unit sent Juror No. 8 a letter, and the Department assigned Deputy Attorney General Kevin Carroll to the case. After case review, the court scheduled the *State v. Dawkins–McMillian* trial for March 31, 2009—only 14 days after the *Knox* trial.

On April 6, 2009, Knox filed a motion for a new trial on the ground that Juror No. 8 was a victim in a pending case being prosecuted by the same Deputy Attorney General who prosecuted her. Rather than questioning the juror herself, the trial judge ordered both defense counsel and the State to take Juror No. 8's deposition.

The deposition covered whether Juror No. 8 knew the attorney general or anyone in his office but not whether he was influenced by his experience as a victim of a crime. For reasons unclear in the record, one-and-a-half years after the conviction, the trial judge denied Knox's motion for a new trial. Knox appealed.

## II. ANALYSIS

■ Knox contends that the trial judge erred by failing to grant a motion for a new trial after discovering that Juror No. 8 was a victim in a pending criminal case and by failing to conduct a sufficient post trial inquiry. The integrity of the judicial process can be adversely affected when a juror seated on a criminal case is on notice and therefore conscious that the Attorney General's Office will represent his interests in a pending trial.[1] Here, we are concerned with juror bias and whether the trial judge performed a sufficient inquiry during *voir dire* and after the trial to determine the impartiality and fairness of Juror No. 8.

## A. As a victim in a pending criminal case, Juror No. 8 was biased.

■ Customarily we would review a trial judge's determination that a juror can fairly and objectively render a verdict for abuse of discretion. Trial judges have discretion to make credibility determinations, but "the exercise of this discretion is limited by the essential demands of fairness."[2] When the trial judge fails to conduct a sufficient inquiry into juror bias, the appellate court may be required to evaluate independently the fairness and impartiality of the juror. In this case, judicial inquiry for juror bias was limited to a deposition

---

1. It is of little moment that the juror may not be able to recognize a particular deputy attorney general by name.

2. *Hughes v. State*, 490 A.2d 1034, 1041 (Del. 1985).

taken outside the presence of the trial judge. Therefore, the trial judge eschewed the opportunity to evaluate the juror's demeanor and credibility, a crucial element in the determination of impartiality.[3] To our knowledge, a decision to inquire into juror bias solely by deposition is without precedent and should not happen again. In effect, the unique circumstances of this case suggest that our inquiry here can be analogized to summary judgment scrutiny, and therefore we review the trial judge's determination of the juror's objectivity *de novo*.

 Knox argues that Juror No. 8's bias originated from his experience as an alleged robbery victim. When a victim seeks justice for the crimes committed against him, the victim's interests align with the Attorney General's interests. The victim has a personal appreciation for the role of prosecutors in bringing justice to criminals. The Department of Justice's focus on pursuing cases for "victims" through "victims' services" reinforces the identification of "victims" with the Attorney General. It would be irrational to ignore the influence of the pending joint endeavor on the juror's objectivity in the *Knox* trial. Even in factually unrelated cases, the victim's experience with the Department of Justice, whether good or bad, previous or ongoing, will affect the victim's perspective. In these situations, courts must be wary of the victim's ability to be fair and impartial in the role of a juror.

Other courts have expressed concern regarding a victim's bias in favor of the prosecution while serving on a jury. This case bears a striking similarity to the situation analyzed in *Mobley v. Florida*.[4] In *Mobley*, a juror denied that he had been a victim of a crime during *voir dire* but later remembered and notified the judge during trial. On appeal, the Florida District Court of Appeal held that defense counsel's motion to strike the juror from the panel and substitute an alternate should have been granted.[5] Although the opinion did not explicitly discuss why having been a victim biased the juror, we can readily infer that the appellate court found sufficient bias to reverse the trial judge's denial of defense counsel's motion to strike the juror.

On the other hand, *Knox* can be distinguished from cases where a juror was merely a potential witness for the prosecution. In *Commonwealth v. Frye*,[6] a juror was scheduled to testify as Pennsylvania's sole eyewitness in a different criminal case scheduled to begin the next day. The defendant claimed that a situational relationship between the juror and the prosecutor's office could be inferred from appearing as a prosecution witness, but the court held that the defendant did not present particularized evidence of juror bias.[7] Unlike a witness who is indifferent to the resolution of a case and has no formal relationship with the prosecution, a victim is emotionally invested in the outcome and personally dependent on the attorney general to bring the person the victim perceives to be the wrongdoer to justice. Therefore, Knox presents a case where the question of a juror's objectivity poses a serious issue.

An added layer of complexity involves Juror No. 8's status as a victim in a *pending* criminal case. Because the vic-

---

3. *Dutton v. State,* 452 A.2d 127, 137 (1982).

4. *Mobley v. State,* 559 So.2d 1201, 1202 (Fla. Dist.Ct.App.1990).

5. *Id.*

6. *Commonwealth v. Frye,* 909 A.2d 853 (Pa.Super.Ct.2006).

7. *Id.* at 860.

tim inevitably forms an impression, either positive or negative, about the attorney general's handling of his case, that awareness clouds the victim's judgment as a fair and impartial juror. This problem intensifies when the Deputy Attorney General is the same in both cases. As a victim of a robbery in a pending case, Juror No. 8 was conscious that the Attorney General's Office would represent him and present evidence intended to convict a perpetrator in another case. The fact that Juror No. 8's case would go to trial only 14 days after Knox suggests an inference that the pending trial would be at the forefront of the juror's mind.

█ In violent crime cases, trial judges commonly ask venire members whether they or a family member have ever been a victim of a violent crime.[8] The logic supporting this practice is based on a belief that the victims would be unable to separate their personal experiences with violent crime when adjudicating the current case. A victim in a pending robbery trial may have a similar tendency when adjudicating a case about writing bad checks. Both crimes involve the intent to permanently deprive another of property. Although one is theft by force and the other is theft by deception, they both constitute *malum prohibitum*. Furthermore, this policy rests not only on the similarity of the crimes but also on the victim's personal experience with the criminal justice system and the prosecution. Whether the

victim believes that justice would be performed or that the defendant might escape punishment in his case, can impact the victim's ability to serve as an impartial juror in a contemporaneous proceeding.

This case is unique because the trial judge neither uncovered Juror No. 8's status during *voir dire* nor conducted a post trial, in court hearing to ask the juror whether he was impartial despite his connection with the Attorney General's Office. If the trial judge had made those determinations, those findings would have been given deference. With no questions on the record directed to Juror No. 8's ability to be impartial despite his experience, we find that Juror No. 8, a victim in a pending criminal trial, lacked the capacity to render a fair and impartial verdict in the Knox trial.

## B. Failure to conduct a sufficient inquiry into juror bias during *voir dire* and after the trial constitutes plain error.

█ Defense counsel did not object to the Juror No. 8's deposition[9] nor request that the Superior Court judge conduct an evidentiary hearing in court. Failure to make an objection at trial constitutes a waiver of the defendant's right to raise that issue on appeal, unless the error is plain.[10] Plain error exists when the error was "so clearly prejudicial to [a defendant's] substantial rights as to jeopardize the very fairness and integrity of the trial process."[11] We apply the plain

---

8. *See Banther v. State*, 823 A.2d 467, 484 (Del.2003).

9. Knox argues that the trial judge's delegation of the inquiry to a deposition by the attorneys was inappropriate under Criminal Rule 24(a) which states that "The court shall itself conduct the examination of prospective jurors." Super. Ct.Crim. R. 24(a). However, Criminal Rule 24(a) does not apply to post trial inquiries of juror misconduct and bias because the rule specifically references prospective jurors.

This implies that the rule is only applicable to *voir dire*. Therefore, Knox's argument fails under Super. Ct.Crim. R. 24(a).

10. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986) (citing *Goddard v. State*, 382 A.2d 238 (Del.1977)).

11. *Bullock v. State*, 775 A.2d 1043, 1047 (Del. 2001) (citing *Dutton*, 452 A.2d at 146).

error standard to evaluate the denial of the motion for a new trial. A precise statement of the plain error standard was set forth in *Wainwright v. State:* [12]

> Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.[13]

In *Baker v. State*, we held that *Wainwright* helps us "determine whether instances of misconduct to which defense counsel did not object, and which the trial judge did not address *sua sponte*, are nonetheless so facially egregious that they require reversal of the defendant's convictions." [14]

██ Allowing Juror No. 8 to be empanelled in this case was so prejudicial that it jeopardized the fairness and integrity of the trial process. In *Jackson v. State*, this Court held that juror impartiality must be maintained not only in the interest of fairness to the accused but also to assure the integrity of the judicial process.[15] Furthermore, as stated in *Banther v. State*, "jury bias, either actual or apparent, undermines society's confidence in its judicial system." [16] Not only was Juror

No. 8 conscious of the fact that the Attorney General's Office would represent his interests as a victim two weeks after the Knox trial, but the trial judge did not conduct a sufficient inquiry during *voir dire* to determine whether any of the venire members were victims of a crime. This question would have allowed the trial judge to follow up with whether Juror No. 8 could be fair and impartial given his connection to the Department of Justice. Afterwards, the trial judge could strike the juror for cause, or defense counsel would, as a matter of certainty, exercise a peremptory challenge to strike Juror No. 8.

██ Material defects apparent on the face of the record demonstrate plain error. First, Nickolas Dawkins–McMillian robbed Juror No. 8 in September of 2008. Second, the Victim Services Unit of the Attorney General's office sent Juror No. 8 a letter about their representation, and the Department of Justice assigned Deputy Attorney General Kevin Carroll to the case. Third, the trial judge did not ask whether any of the venire members were victims of a crime. Fourth, the trial judge did not conduct a post trial inquiry in court to determine whether Juror No. 8's experience as a victim in a pending trial influenced or biased him during deliberations. These facts create serious questions about Juror No. 8's ability to be objective during the *Knox* trial.

██ This error deprived Knox of a substantial right. Under the Sixth

---

12. By way of example, the plain error standard of review articulated in the prosecutorial misconduct cases can be applied here because the policy of protecting against error that "adversely affects the integrity of the judicial process" is the same. *Hunter v. State,* 815 A.2d 730, 738 (Del.2002) (quoting *Brokenbrough v. State,* 522 A.2d 851, 864 (Del.1987)). Although we review the judge's holding for plain error, this case involves juror bias, not prosecutorial misconduct.

13. *Wainwright v. State,* 504 A.2d 1096 (Del. 1986) (citations omitted).

14. *Baker v. State,* 906 A.2d 139, 151 (Del. 2006).

15. *Jackson v. State,* 374 A.2d 1, 2 (Del.1977).

16. *Banther v. State,* 823 A.2d 467, 482 (Del. 2003).

Amendment of the United States Constitution[17] and Article I, § 7 of the Delaware Constitution,[18] all defendants have a fundamental right to trial by an impartial jury. The impartiality and indifference of jurors is essential to the proper functioning of the jury.[19] This Court has held that "if only one juror is improperly influenced, a defendant in a criminal case is denied his Sixth Amendment right to an impartial jury."[20] Juror No. 8's awareness that the Attorney General's Office represented him in a separate, pending trial, deprived Knox of the inalienable right to an impartial jury.

Juror No. 8 did not respond affirmatively to the rather narrow *voir dire* question[21] asking whether he knew Deputy Attorney General Carroll, the defense attorney, or anyone in their office.[22] Furthermore, the trial judge did not ask Juror No. 8 during *voir dire* whether he could be impartial given his status as a victim in a pending criminal case for the rather obvious reason that there was no information to suggest that any member of the venire was a victim; or, for that matter that any practice in Superior Court existed to ask the question as a matter of routine in the trial of a nonviolent crime. Because the trial judge failed to ask the venire members whether they were victims of a crime, Knox did not have a chance to probe Juror No. 8's potential bias during *voir dire.* Even if the trial judge had questioned Juror No. 8 and determined that Juror No. 8 could serve, any rational defense counsel would be alerted to exercise a peremptory challenge to strike Juror No. 8.[23]

After discovery of Juror No. 8's role, the trial judge should have conducted an in court inquiry into the juror's ability to be fair and impartial and should not have relied solely on a deposition conducted out of court by counsel limited to a single question; therefore, we must conclude that the inquiry into Juror No. 8's objectivity was inadequate as a matter of law. We hold that, in the future, all post trial inquiries into juror bias must be conducted in a proceeding before the judge.

### III. CONCLUSION

Since Juror No. 8 was conscious that the Attorney General's Office would represent him in a pending trial and the unusual

17. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . .").

18. Del. Const. art. I, § 7 ("In all criminal prosecutions, the accused hath a right to . . . a speedy and public trial by an impartial jury . . .").

19. *Banther,* 823 A.2d at 481; *see Hughes v. State,* 490 A.2d 1034, 1040 (Del.1985) (citing *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948)).

20. *Hall v. State,* 12 A.3d 1123, 1127 (Del. 2010) (quoting *Styler v. State,* 417 A.2d 948, 951–52 (Del.1980)).

21. *State v. Knox,* 2009 WL 2621078, at *1 (Del.Super.Ct. July 24, 2009) (ORDER) ("Do you know the attorneys in this case or any other attorney or employee in the offices of the Attorney General or the defense counsel?").

22. Note, however, that the trial judge held that Juror No. 8's *voir dire* answer was accurate because he had only received a letter from the Attorney General's office at the time. *State v. Knox,* No. 0807040237 (Del.Super.Ct. Aug. 23, 2010) (ORDER). Although neither party nor the trial judge sought to place the Department of Justice Victims' Services letter in the record, the record suggests that at least, in regard to the Deputy Attorney General's name, the response was accurate.

23. App. to Op. Br. at 49–56 (demonstrating that Knox did not use any of her peremptory challenges).

circumstances prevented Knox from exercising a preemptory challenge to strike Juror No. 8 from the jury, we hold the denial of the motion for a new trial without sufficient inquiry by the trial judge to constitute plain error. The judgment of the Superior Court is reversed and remanded for a new trial.