Steven W. SCHWAN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 246, 2012.

Supreme Court of Delaware.

Submitted: March 13, 2013.
Decided: May 2, 2013.

---

51. *Bentley v. State*, 930 A.2d 866, 875 (Del. 2007) (quoting *Henry*, 805 A.2d at 864).

52. *Id.* (quoting *Henry*, 805 A.2d at 865).

53. *Id.*

54. *Id.* at 876.

55. *Id.*

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

This is the direct appeal of the defendant-appellant, Steven Schwan ("Schwan"), after a Superior Court jury convicted him of two counts of Unlawful Sexual Contact in the Second Degree, and a bench trial resulted in an additional conviction for Unlawful Sexual Conduct by a Sex Offender Against a Child. Schwan raises one argument on appeal: that the trial judge committed reversible error by not excluding, for cause, a juror who was acquainted with a prosecutor, although that same prosecutor was not involved in Schwan's case.

We have concluded that the trial judge erred by failing to exclude the juror, in the absence of a determination that the juror could render a fair and impartial verdict. Because Schwan's Sixth Amendment right to a fair trial by an impartial jury was violated, his convictions must be reversed.

### Basic Facts

On June 3, 2011, Schwan's daughter invited two minor friends to her house to watch movies. Schwan joined the three girls to watch the movies in his daughter's bedroom. During the movie, Schwan joined the girls on the bed. A.P.,[1] the complainant, testified at Schwan's trial that she was wearing only boxer shorts and a camisole when Schwan laid down behind her on the bed. During the movie, Schwan's daughter and the other friend fell asleep, while Schwan and A.P. were still awake. A.P. alleges that Schwan then performed multiple sexual acts on her while she pretended to be asleep.

Schwan was charged by indictment with Rape in the Second Degree,[2] Unlawful Sexual Conduct by a Sex Offender Against a Child,[3] Rape in the Fourth Degree,[4] and two counts of Providing Alcohol to a Minor.[5] The Unlawful Sexual Conduct by a Sex Offender Against a Child charge was severed before trial for a bench trial based on the evidence presented at the jury trial.

At trial, all three minor females testified. The jury acquitted Schwan of Rape in the Second Degree, Rape in the Fourth Degree, and both counts of Providing Alcohol to a Minor. The jury did, however, find Schwan guilty of two counts of the lesser included crime of Unlawful Sexual Contact in the Second Degree.[6] Additionally, based on the evidence presented at the jury trial, the trial judge found Schwan guilty of the severed charge of Unlawful Sexual Conduct by a Sex Offender Against a Child.

---

1. The complainant, a minor, has been assigned a pseudonym pursuant to Del. Supr. Ct. R. 7(d).

2. Del.Code Ann. tit. 11, § 772.

3. Del.Code Ann. tit. 11, § 777.

4. Code Ann. tit. 11, § 770.

5. Code Ann. tit. 4, § 904.

6. The record reflects that the jury found Schwan guilty of this lesser included charge for both Rape in the Second Degree and Rape in the Fourth Degree.

### Facts Regarding Juror 11

During the *voir dire* of the petit jury, the trial judge asked the now-standard question, "Do you know the attorneys in this case, *or any other attorney or employee in the offices of the Attorney General* or defense counsel?" (emphasis added). Eventual Juror 11, the juror in question in this appeal, did not respond that she knew a non-trial prosecutor. Accordingly, defense counsel had no reason to move to exclude Juror 11 at that time she was seated.

Without using his full complement of peremptory challenges allowable by court rule,[7] defense counsel indicated that he was content with the jury panel. That same day, the jury was sworn and sent home. Schwan's trial was to start the next morning.

The following day, before the beginning of any proceedings, the trial prosecutor notified the judge about a potential conflict with the person seated as Juror 11. Through other members in the Attorney General's office, the trial prosecutor discovered that Juror 11 had a connection to another prosecutor who was not involved with Schwan's trial (the "non-trial prosecutor"). The trial prosecutor also learned that Juror 11 was specifically told by the non-trial prosecutor, sometime before being selected for the jury, that if she [Juror 11] was selected to serve on a jury, that she should reveal her connection to the non-trial prosecutor to the court during *voir dire.*

The trial judge decided to make inquiries of Juror 11 in the presence of counsel. Juror 11 was individually brought into the courtroom—still prior to any trial proceedings—to ascertain her connection to the non-trial prosecutor. The trial judge asked Juror 11 if she knew any of the attorneys in Schwan's case, or any attorneys in the Office of the Attorney General. This time, Juror 11 answered affirmatively. The trial judge suggested, and Juror 11 agreed, that she had misinterpreted the question during *voir dire.* Juror 11 said she thought the initial question during *voir dire* related only to attorneys involved in Schwan's case.

Juror 11 stated that she knew the non-trial prosecutor because Juror 11 was the director of the childcare center where the non-trial prosecutor takes her children. Thus, the juror and the non-trial prosecutor were in an ongoing business relationship. The trial judge then specifically asked Juror 11 if she had ever spoken to the non-trial prosecutor about being called for jury duty. Juror 11 denied ever having spoken to the non-trial prosecutor about that topic. Juror 11 was then excused from the courtroom.

Defense counsel made its first application to have Juror 11 removed. In addition to the connection to the non-trial prosecutor, defense counsel expressed concern that Juror 11 was untruthful when specifically asked about prior conversations with the non-trial prosecutor about being called for jury duty. Defense counsel stated, "it's a little troubling to me that a pretty clear jury *voir dire* question was read, and it appears she had been instructed beforehand to come forward, and she didn't, and upon questioning by the [c]ourt, she denied being instructed to do that." In denying defense counsel's application, the trial judge stated that "the [c]ourt does not believe that there's a basis for cause to remove the juror, so the application is denied."

Following the trial judge's refusal to remove Juror 11 for cause, defense counsel suggested, "[P]erhaps it might be appro-

7. *See* Del. Super. Ct. Crim. R. 24.

priate to ask [the non-trial prosecutor] if she remembers having a conversation with that juror or with someone who works at the daycare facility about that." The trial judge agreed to ask the non-trial prosecutor if she had spoken to Juror 11 about serving on a jury. Before the non-trial prosecutor was located, defense counsel renewed the application to have Juror 11 removed. Defense counsel suggested that "[t]he defense still has peremptory challenges left if the [c]ourt will be willing to consider one of those being used to remove this juror and replace with an alternate." The trial prosecutor responded, "I don't think that's proper." The trial judge agreed: "That's not proper.... You indicated you were content with the jury. That solves that issue."

The non-trial prosecutor was then located and brought into the courtroom. She stated that she had spoken to Juror 11 more than a week before, shortly after Juror 11 received the notification about being summoned for jury duty. At that time, the non-trial prosecutor told Juror 11 that "she should mention that she knows me because I know that that's generally one of the [c]ourt's questions in a criminal trial, and I know sometimes that confuses people when the questions are asked. So I said make sure that you tell them that you know me if you get called and you're asked that question."

After the non-trial prosecutor was excused, the trial prosecutor responded to the trial judge's inquiry on whether this "clear[ed] the air a little bit." The trial prosecutor said: "I think it completes the record and it makes it easier to make the decision. I don't see this being a situation where we have somebody who is well-

acquainted with [the non-trial prosecutor]. And if she says she's not biased in any way, I have no problem with her remaining." Defense counsel then made his third application to have Juror 11 removed, not only on grounds of potential bias, but also because Juror 11 had not been forthcoming about her prior conversations with the non-trial prosecutor. Defense counsel argued:

Well, Your Honor, I don't think the issue is whether the juror is well-acquainted with [the non-trial prosecutor] or not. I think it's pretty clear she is not. The issue is whether the juror was told/informed by [the non-trial prosecutor] that when you're called for jury duty, you need to tell the [c]ourt that you know me. She was told that. I happen to believe [the non-trial prosecutor]'s recollection of the events. The juror plainly stated that never happened. That's an issue for the defense. Defense renews the application for removal.

The trial judge responded that "[b]ased upon the comments that [the non-trial prosecutor] made to help clarify the issue, I'm confident that my earlier decision is correct. The motion is denied. This juror will not be removed for cause."

### *Impartial Jury Mandate*

▇▇ Under the Sixth Amendment of the United States Constitution,[8] all defendants have a fundamental right to a fair trial by an impartial jury.[9] The impartiality of jurors is essential to the proper functioning of the jury.[10] We have previously held that "if only one juror is improperly influenced, a defendant in a crim-

---

**8.** U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury....").

**9.** *Knox v. State*, 29 A.3d 217, 223–24 (Del. 2011).

**10.** *Id.* at 224 (citing *Banther v. State*, 823 A.2d 467, 481 (Del.2003)).

inal case is denied his Sixth Amendment right to an impartial jury."[11] Juror impartiality must be maintained not only in the interest of fairness to the accused, but also to assure the overall integrity of the judicial process.[12] Furthermore, "jury bias, either actual or apparent, undermines society's confidence in its judicial system."[13]

■ *"Voir dire* is the historic method used to identify bias in prospective jurors and is critical to protecting a defendant's right to a fair trial by an impartial jury."[14] In fact, the ancient phase translated literally means "to speak the truth."[15] "The purpose of *voir dire* examination is to provide the court [and the parties] with sufficient information to decide whether prospective jurors can render an impartial verdict based on the evidence developed at trial and in accordance with the applicable law."[16] "One of the primary safeguards for impaneling a fair and impartial jury is a defendant's right to challenge prospec-

tive jurors, either peremptorily or for cause."[17] Thus, a defendant has two *pre-trial* methods of removing a prospective juror from the jury panel: a peremptory challenge or a challenge for cause.

■ When the trial has started, however, if a potential for juror bias is discovered, the challenge for cause is the defendant's only option for relief. Peremptory challenges are a "jury selection tool [that] have historically and uniformly been limited to the pre-trial jury selection process."[18] The fact that alternate jurors are selected, for circumstances where a juror is "later disqualified," reflects the well established principle that unused peremptory challenges are unavailable after the trial has commenced.[19] Accordingly, when a prospective juror is untruthful during *voir dire* and is sworn in with the jury, the defendant has been deprived of the historically important peremptory challenge right to remove a juror without showing cause.[20]

11. *Hall v. State*, 12 A.3d 1123, 1127 (Del. 2010) (quoting *Styler v. State*, 417 A.2d 948, 951–52 (Del.1980)).

12. *Knox v. State*, 29 A.3d at 223; *see also Jackson v. State*, 374 A.2d 1, 2 (Del.1977).

13. *Knox v. State*, 29 A.3d at 223 (quoting *Banther v. State*, 823 A.2d at 481). "So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. Not only the evil, in such cases, but the appearances of evil, if possible, should be avoided." *Jackson v. State*, 374 A.2d at 2–3 (quoting *George F. Craig & Co. v. Pierson Lumber Co.*, 169 Ala. 548, 53 So. 803, 805 (1910)).

14. *Banther v. State*, 823 A.2d at 481–82; *see also Diaz v. State*, 743 A.2d 1166, 1172 (Del. 1999); *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

15. Black's Law Dictionary 1710 (9th ed. 2009).

16. *Hughes v. State*, 490 A.2d 1034, 1041 (Del. 1985) (citing *Parson v. State*, 275 A.2d 777, 780 (Del.1971)).

17. *Banther v. State*, 823 A.2d at 482 (citing *Jackson v. State*, 374 A.2d at 2). The purpose of peremptory challenges "is to permit litigants to assist the government in the selection of an impartial trier of fact." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

18. *United States v. Harbin*, 250 F.3d 532, 539 (7th Cir.2001). *See also United States v. Martinez–Salazar*, 528 U.S. 304, 316, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).

19. *United States v. Harbin*, 250 F.3d at 539.

20. Peremptory is defined as "[n]ot requiring any shown cause." Black's Law Dictionary 1251 (9th ed. 2009). *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ("[T]he peremptory challenge occupies an important position in our trial procedures."); *United States v. Harbin*, 250 F.3d at

This case presents the unusual scenario where potential juror bias is discovered after *voir dire* but before the jury trial has actually started. Since the jury had been sworn in Schwan's case, however, jeopardy had attached.[21] At that point in time, there is no legal support for the proposition that the exercise of an unused peremptory challenge would still be available to the defendant as a matter of right.

### Challenge For Cause

 Historically, the decision to keep or exclude a prospective juror—or an impaneled juror—who is challenged for cause rests in the sound discretion of the trial judge.[22] The deference given to such determinations on appeal is based upon the judge's ability to assess the veracity and credibility of the potential juror.[23] In *Reynolds v. United States*,[24] the Supreme Court held:

[T]hat upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of

that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest.[25]

The United States Supreme Court has not, however, established a constitutional test to determine juror partiality. Instead, the Supreme Court has stated that "[i]mpartiality is not a technical conception. It is a state of mind. . . . [and] the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." [26]

### Delaware's Voir Dire Requirements

 Superior Court Criminal Rule of Procedure ("Rule") 24 explains the trial judge's obligations during pretrial *voir dire*. Rule 24 states, "the court shall conduct or permit such examination as is reasonably calculated to ascertain prejudice of a juror." During the *voir dire* process, the judge determines that if any individual is unable or unwilling to hear the particular case at issue fairly and impartially, that individual should be removed from the panel for cause.[27] If the juror affirmatively answers that she or he can reach a verdict impartially, the trial judge's acceptance of that answer is afforded deference

540–41 (citing *Holland v. Illinois*, 493 U.S. 474, 483, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990)) ("The Supreme Court has long recognized that peremptory challenges are one of the most important of the rights secured to the accused, and that the system of peremptory challenge has traditionally provided the assurance of impartiality.").

21. *Hughey v. State*, 522 A.2d 335, 339 (Del. 1987).

22. *Parson v. State*, 275 A.2d at 781–82.

23. *Id.*

24. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878).

25. *Id.* at 156.

26. *United States v. Wood*, 299 U.S. 123, 145–46, 57 S.Ct. 177, 81 L.Ed. 78 (1936).

27. Del. Super. Ct. Juror Use Standard 8, Removal from the Jury Panel for Cause:

If the judge determines during the voir dire process that any individual is unable or unwilling to hear the particular case at issue *fairly and impartially*, that individual should be removed from the panel. Such a determination may be made on motion of counsel or on the judge's own initiative. (Emphasis added); *see also Knox v. State*, 29 A.3d 217, 224 (Del.2011) (juror already seated).

on appeal, as explained by this Court in *Parson v. State*.[28]

In *Parson*, a prospective juror answered that she had an opinion as to the defendant's guilt, and that at that moment she could not presume him innocent.[29] However, the juror also stated that the opinion she had formed would not prevent her from being an impartial juror and that she could follow the court's instructions to presume the defendant's innocence until a conviction was reached.[30] The trial judge denied defense counsel's motion to remove the juror for cause. This Court affirmed that decision and stated:

> It is apparent that the decision as to whether or not to excuse such a prospective juror for cause rests in the discretion of the trial judge who must determine from the witness' testimony whether or not he feels that the statement to the effect that she could, despite her opinion, nevertheless render an impartial verdict, was satisfactory. If the trial judge believes the witness' statement, then he may permit the individual to be drawn as a juryman.[31]

■■■■■ Although Superior Court Criminal Rule of Procedure 24 only applies to *voir dire* during the pretrial jury selection process, we hold that those same procedures should be followed after a juror has been seated and issues about that juror's impartiality are raised.[32] The trial judge must personally conduct such examination as is necessary to ascertain the seated juror's ability to reach a verdict fairly and impartially.[33] Following that

substantive judicial inquiry, a definite judicial ruling must be made on the record so that there can be effective appellate review on the issue of either cause for removal *per se* or the assessment of the juror's credibility, if removal for cause is discretionary.

### Standard of Review

■■■ A trial judge's decision not to remove a juror for cause is ordinarily entitled to deference.[34] However, when the trial judge fails to conduct a sufficient inquiry into juror bias, we are required to independently evaluate the fairness and impartiality of the juror.[35] Accordingly, in *Knox v. State*, we held that when the trial judge fails to make a sufficient inquiry into potential juror bias, our examination is more analogous to *de novo* review.[36]

■■■ In this case, the record reflects that the trial judge's examination of Juror 11 was incomplete. Juror 11 was never asked if she could render a fair and impartial verdict, notwithstanding her ongoing business relationship with the non-trial prosecutor. Juror 11 was also never asked about the inconsistency between her representations and those of the non-trial prosecutor. Accordingly, there was no opportunity to assess Juror 11's credibility on either of those issues. Therefore, the trial judge's determination that Juror 11 should not be excused for cause is not entitled to deference in this appeal.

### Seated Juror Challenges

Schwan asserts that it was reversible error for the trial judge not to remove

---

28. *Parson v. State*, 275 A.2d 777 (Del.1971).

29. *Id.* at 781.

30. *Id.*

31. *Id.* at 781–82.

32. *See Knox v. State*, 29 A.3d at 224.

33. *Id.*

34. *Id.* at 220.

35. *Id.* at 220–21.

36. *Id.* at 221.

Juror 11 for cause. The challenge for cause, and the investigation into potential bias, can arise in different contexts. Here, the specific context is that Juror 11 failed to disclose her connection to the prosecutors' office during *voir dire*—and that connection was not discovered until after Juror 11 was seated and sworn in for Schwan's trial. This Court's jurisprudence on challenges for cause in this specific context is well established.

The investigation into a seated juror's potential bias, and whether that juror should then be excluded for cause, depends upon the nature of the juror's misrepresentation during *voir dire*. To demonstrate reversible error in cases involving inadvertent nondisclosure, a defendant must demonstrate that "a juror failed to answer honestly a material question on *voir dire*," and that "a correct response would have provided a valid basis for a challenge for cause."[37] Where a juror deliberately failed to honestly answer a material question during *voir dire*, however, such dishonesty has been considered evidence of bias and resulted in a new trial.[38]

The State argues that Schwan's prosecution and Juror 11's presence on his jury is analogous to the factual circumstances in *Caldwell v. State*.[39] In *Caldwell*, the trial prosecutor discovered, after the trial was in progress, that a juror in Caldwell's cocaine trafficking prosecution "was a close personal friend of the wife of [a non-trial prosecutor] and that the juror socializes

regularly with [the non-trial prosecutor]."[40] Caldwell's drug convictions were reversed. However, the juror's acquaintanceship with the non-trial prosecutor was not a basis for the reversal.[41]

The facts involving the juror in *Caldwell* are distinguishable from Schwan's case in two important respects. First, that jury panel was not asked if they knew any non-trial prosecutors. In *Caldwell*, the record reflected that the jury *voir dire* questions only asked, " 'Do you know any of the attorneys in this case....' " and did not specifically inquire about other nonparticipating attorneys in the Office of the Attorney General.[42] Following our decision in *Caldwell*, that broader question is now asked routinely. Therefore, there was no indication that the juror in *Caldwell* intentionally failed to answer a direct material question during *voir dire*. Second, after the relationship with a non-trial prosecutor was discovered in *Caldwell*, the juror was asked if she could be fair and render an impartial verdict, notwithstanding her friendship with the non-trial prosecutor.[43] The affirmative response to that specific inquiry gave the trial judge in *Caldwell* an opportunity to assess the juror's credibility.

The facts in Schwan's case are more like the circumstances in *Jackson v. State*,[44] where a juror in a robbery prosecution failed to disclose that his nephew was a non-trial prosecutor, despite specific *voir dire* questioning as to whether any jury panel member was related to any of the

37. *Banther v. State*, 783 A.2d 1287, 1290–91 (Del.2001) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)).

38. *Jackson v. State*, 374 A.2d 1, 2 (Del.1977); see also *Banther v. State*, 783 A.2d at 1291.

39. *Caldwell v. State*, 780 A.2d 1037, 1057–59 (Del.2001).

40. *Id.* at 1057–58.

41. *See id.* at 1059–60.

42. *Id.* at 1058 (emphasis omitted).

43. *Id.*

44. *Jackson v. State*, 374 A.2d 1 (Del.1977).

trial attorneys or the other attorneys in their offices.[45] Although the nephew was not involved in Jackson's prosecution, the record reflected that the undisclosed family relationship was "deliberate," and the impartiality of the proceeding was tainted.[46] We held that the impartial administration of justice is severely compromised when the juror's failure to honestly answer a material question during *voir dire* is deliberate.[47]

### Reversal Required

In this case, one of the *voir dire* questions was "Do you know the attorneys in this case, or any other attorney or employee in the offices of the Attorney General or the defense counsel?" Juror 11 did not respond affirmatively to that unambiguous inquiry. When Juror 11 was asked that same question the day after she was seated, her immediate response was in the affirmative. She stated that she knew a non-trial prosecutor and that she misunderstood that same question when it was asked during *voir dire* on the previous day. Juror 11 also denied having discussed her summons for jury duty with the non-trial prosecutor.

After Juror 11's explanation and representations, the non-trial prosecutor was questioned separately. The non-trial prosecutor completely contradicted the representations made by Juror 11 that they had never discussed the summons for jury duty. Moreover, the non-trial prosecutor said she told Juror 11 to expect the standard *voir dire* question that was asked in Schwan's case and to disclose the relationship with the non-trial prosecutor.

After the non-trial prosecutor was questioned, the trial judge responded that "[b]ased upon the comments that [the non-trial prosecutor] made to help clarify the issue, I'm confident that my earlier decision is correct. The motion is denied. This juror will not be removed for cause." That ruling was made after the non-trial prosecutor completely contradicted Juror 11's representations and the trial prosecutor said "[a]nd if she [Juror 11] says she's not biased in any way, I have no problem with her remaining."

A *de novo* review of the record reflects no questions were asked regarding Juror 11's ability to be fair and impartial notwithstanding her connection to a non-trial prosecutor. Moreover, the record reflects no inquiry into the complete inconsistency between the representations of Juror 11 and the non-trial prosecutor about a conversation concerning Juror 11's summons for jury duty. Thus, on two separate subjects, "the trial judge eschewed the opportunity to evaluate this juror's demeanor and credibility, a crucial element in the determination of impartiality."[48] Accordingly, there is no record to support a determination on appeal that Juror 11 had the capacity to render a fair and impartial verdict in Schwan's case.

■ Therefore, as in *Knox*, "we must conclude that the inquiry into [Juror 11's] objectivity was inadequate as a matter of law."[49] In the absence of an affirmative assertion by Juror 11 that she could be fair and impartial, notwithstanding her acquaintance with the non-trial prosecutor,[50] and in the absence of an explanation for the inconsistency in her representations

---

**45.** *Id.* at 2.

**46.** *Id.*

**47.** *See id.*

**48.** *Knox v. State,* 29 A.3d 217, 221 (Del.2011).

**49.** *Id.* at 224.

**50.** *See Weber v. State,* 547 A.2d 948, 954 (Del. 1988).

and those of the non-trial prosecutor, the trial judge could not make a credibility determination regarding Juror 11 on those fundamental issues. Accordingly, the record does not establish that Juror 11 was capable of serving as a fair and impartial juror in Schwan's trial.

### Conclusion

Schwan was denied his Sixth Amendment right to a fair trial by an impartial jury. The judgments of the Superior Court are reversed and this matter is remanded for a new trial.