# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
            )
v.                  )      **ID No. 2202011921A/B**
            )
**TRAMONT MITCHELL,**     )
           Defendant. )


Submitted:  November 10, 2025
Decided:   January 6, 2026
Written Opinion Issued:  February 5, 2026


## MEMORANDUM OPINION AND ORDER


*Upon Defendant Tramont Mitchell's Motion for New Trial,*
**DENIED**.


Zachary D. Rosen and Marc Petrucci, Deputy Attorneys General, DEPARTMENT OF JUSTICE, Wilmington, Delaware, for the State of Delaware.

Benjamin S. Gifford IV, Esquire, and Finny Q. Lopez, Esquire, THE LAW OFFICE OF BENJAMIN S. GIFFORD IV, Wilmington, Delaware, for Tramont Mitchell.


**WALLACE, J.**

Tramont Mitchell was convicted of first-degree murder and filed a motion for a new trial after his post-verdict investigation of the jurors in his case revealed Juror No. 6's previously unknown, decades-old, arrest record. Mr. Mitchell claims that Juror No. 6 deliberately failed to honestly answer a certain *voir dire* question and that, if she had done so, she would have been struck from the jury either for cause or peremptorily. The Court held a hearing that included the taking of Juror No. 6's testimony to determine whether a new trial is required.

The Court has closely examined Mr. Mitchell's Motion for a New Trial[1] and supplements,[2] the State's response[3] and supplements,[4] and the evidentiary record developed. For the reasons below, Mr. Mitchell's Motion for a New Trial is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court held jury selection the Thursday before Mr. Mitchell's two-week jury trial for murder in the first degree and possession of a firearm during the commission of a felony commenced.[5] To streamline the jury selection process, the parties agreed that any potential jurors who answered "yes" to any initial *voir dire*

---

[1] D.I. 57.

[2] D.I. 63; D.I. 67.

[3] D.I. 58.

[4] D.I. 64; D.I. 66.

[5] *See generally* Jury Selection Tr. (D.I. 69).

question posed would be moved to a secondary jury pool for possible individual questioning, but not excused until a jury was finally selected.[6] After the first-round questions, there were a sufficient number of potential jurors who answered "no," the full jury with alternates was seated, and individual questioning of potential jurors in the secondary pool was never needed.[7]

Juror No. 6—a 61-year-old woman—was one of the individuals to answer "no" to all *voir dire* questions, and ultimately, she was selected to be a member of the jury that sat on Mr. Mitchell's case.[8]

Some months after the trial was concluded and the verdict entered against Mr. Mitchell, it came to light that Juror No. 6 had a somewhat dated arrest record. More specifically, court records demonstrated that she had been charged in both 1998 and 2000 with offensive touching—an unclassified misdemeanor.[9] The first matter was filed in the Court of Common Pleas; the second was filed in Family

---

[6]  Jury Selection Tr. at 4.

[7]  *Id.* at 41.

[8]  *See id.* at 36-37.

[9]  Def.'s Mot. for New Trial ¶¶ 11-12, Ex. B and C (D.I. 57); State's Resp. at 2-3, Ex. A (D.I. 58).

It turns out the relevant criminal history and court records aren't the easiest to navigate. It appears Juror No. 6's records had been catalogued under two different identification numbers. *See* State's Resp. at 2-3; Feb. 12, 2025 Status Hr'g Tr. at 8-9 (D.I. 70) (explaining that the record the State had at jury selection did not contain any arrest information, that the Defense's first search of the public court record uncovered just one incident, and that upon further research the State was able to locate and provided information on the second).

Court.[10]  In both instances, the State entered a *nolle prosequi* on the charges very early in the proceedings.[11]

One of the first-round *voir dire* questions asked was:

> Have you, any member of your immediate family or a close personal friend ever been accused of, a victim of, or a witness to a criminal offense other than an ordinary traffic violation?[12]

The parties agree that being "accused of" a crime includes being charged or arrested; Juror No. 6 answered this question incorrectly.[13]

As sentencing neared, Mr. Mitchell's counsel discovered Juror No. 6's record "kind of on a lark" when checking each of his jurors' names through the Judicial Information Center (JIC) to hopefully find grounds for appeal.[14]  Upon Mr. Mitchell's motion for a new trial, the Court conducted an in-person evidentiary hearing with Juror No. 6 about the issue.[15]

When Juror No. 6 was questioned on why she didn't answer "yes" to being

---

[10]  Def.'s Mot. for New Trial, Ex. B and C; State's Resp., Ex. A.

[11]  Def.'s Mot. for New Trial, Ex. B and C; State's Resp., Ex. A.

[12]  Jury Selection Tr. at 18; Def.'s Mot. for New Trial Ex. A (*Voir Dire* Questions).

[13]  *See generally* Def.'s Mot. for New Trial ¶ 9; State's Resp. at 6-12.

[14]  Feb. 12, 2025 Status Hr'g Tr. at 4-5:

> And I think I'm okay saying that, you know, Mr. Mitchell, after our conversation, asked me to explore any possible avenue of potential issues that could be raised on direct appeal after sentencing. Kind of on a lark, I went on JIC and just started running juror names to see if there were any issues because I, you know, I had recalled that we didn't actually *voir dire* individually anybody. And that is how I came upon this.

[15]  D.I. 61.

previously "accused of" a crime, she initially denied that she had.[16] But upon further questioning about the decades-past incidents, she was able to recall some detail and became extremely emotional and distraught.[17] She explained that the incidents didn't come to mind "[b]ecause of how long ago that it happened."[18] She further explained: "I wasn't trying to be deceitful or dishonest. I just didn't think about it."[19] Throughout the entire hearing, she stated that there was nothing about those previous situations that would have made it difficult for her to serve as a juror or that created any bias.[20]

## II. PARTIES' CONTENTIONS

Mr. Mitchell now suggests that he is entitled to a new trial because of Juror No. 6's inaccuracy during *voir dire*.[21] In Mr. Mitchell's view: (1) Juror No. 6's inaccurate "no" answer was deliberate and material; (2) a correct answer from Juror No. 6 would have prevented her from serving on the jury for cause given the way jury selection unfolded; and, (3) if Juror No. 6's record had been known, the defense would have likely used a peremptory strike on her.[22]

---

[16] Mot. for New Trial Tr. at 9-11 (D.I. 62).

[17] *See id.* at 12-17.

[18] *Id*. at 12.

[19] *Id*. at 14-15.

[20] *Id*. at 12-15.

[21] *See generally* Def.'s Mot. for New Trial; *see also* Mot. for New Trial Tr. at 12-15.

[22] Def.'s Mot. for New Trial at 5-10; Def.'s Supp. Br. at 2-6.

The State disagrees.[23]  It insists that Mr. Mitchell's motion does not warrant granting of a new trial.[24]  Says the State:  Juror No. 6 was not "deliberately dishonest", and the prior arrests didn't affect the impartiality of Juror No. 6 or bias the rest of the jury.[25]

## III.  APPLICABLE LEGAL STANDARDS

A motion for a new trial is controlled by this Court's Criminal Rule 33.[26]  Thereunder, "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."[27]  But the Court does so "'only if the error complained of resulted in actual prejudice or so infringed upon defendant's fundamental right to a fair trial as to raise a presumption of prejudice.'"[28]

"[T]he courts of this State have given 'the closest scrutiny' to applications for a new trial based upon the grounds of newly discovered evidence" based on jury fitness or deliberations.[29]  Indeed, our courts tend to "limit[] after-the-fact inquiries

---

[23]  *See generally* State's Resp.

[24]  *Id.* at 3-15; State's Supp. Br. at 2-7.

[25]  State's Resp. at 3-15; State's Supp. Br. at 2-7.

The State originally claimed that Mr. Mitchell's motion was untimely, but at oral argument the State withdrew its untimeliness argument. *See* Feb. 12, 2025 Status Hr'g Tr. at 15-20. Thus, the Court will review Mr. Mitchell's motion on the merits.

[26]  Del. Super. Ct. Crim. R. 33.

[27]  *Id.*

[28]  *State v. Ryle*, 2015 WL 5004903, at *1 (Del. Super. Ct. Aug. 14, 2015), *aff'd*, 149 A.3d 505 (Del. 2016) (quoting *Hughes v. State*, 490 A.2d 1034, 1043 (Del. 1985)).

[29]  *Styler v. State*, 417 A.2d 948, 952 (Del. 1980) (quoting *State v. Watson*, 186 A.2d 543, 543 (Del. Super. Ct. 1961), *aff'd*, 184 A.2d 780 (Del. 1962)).

into jury verdicts" because without limits "'[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict."[30]

## IV. ANALYSIS

In the norm on applications like this, the complaining party must first "demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."[31] But if the juror's inaccurate answer was an honest mistake that revealed no bias or prejudice, a motion for a new trial is properly denied.[32] This is because "'[t]o invalidate the result of a [multi-]week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give.'"[33]

---

[30] *Id.* (quoting *McDonald v. Pless*, 238 U.S. 264, 267 (1915)).

[31] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) ("We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.")); *accord United States v. Richards*, 241 F.3d 335, 344 (3rd Cir. 2001); *State v. Cooke*, 2012 WL 3060956, at *7 (Del. Super. Ct. July 24, 2012) ("*Cooke I*"), *aff'd*, 97 A.3d 513, 551-56 (Del. 2014) ("*Cooke II*") (instructing that for criminal cases involving inadvertent non-disclosure by a juror, Delaware has adopted the standard set by the United States Supreme Court in *McDonough*).

[32] *See Smallwood v. State*, 2002 WL 31883015, at *2 (Del. Dec. 26, 2002).

[33] *Cooke II*, 97 A.3d at 556 (quoting *McDonough*, 464 U.S. at 555) (alteration in original); *see also Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996) ("A party cannot satisfy the first part of this test merely by demonstrating a juror provided a 'mistaken, though honest, response to a question.'") (quoting *McDonough*, 464 U.S. at 548).

It is this Court that must determine in the first instance whether a new trial should be granted in the interests of justice based upon a juror's failure to disclose information during *voir dire*.[34] In that endeavor, a trial judge has broad discretion to investigate as he or she sees fit and make necessary credibility determinations.[35]

And the deference given to such determinations is based upon the judge's ability to assess the veracity and credibility of the juror firsthand.[36] When doing so post-trial, the judge employs the same tools and makes the same appraisals as he or she does during *voir dire* and when engaging in analogous factfinding in other contexts.[37]

---

[34] *Cooke I*, 2012 WL 3060956, at *7; *see also McDonough*, 464 U.S. at 559 (Brennan, J., concurring).

[35] *See Sheeran v. State*, 526 A.2d 886, 897 (Del. 1987) (noting the "very broad discretion" a trial judge has in deciding whether a case must be retried or a juror summoned and investigated); *see also Cooke II*, 97 A.3d at 555 (explaining that this "Court's assessment of a juror's honesty during *voir dire* is entitled to 'special deference'") (quoting *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).

[36] *Cooke II*, 97 A.3d at 555 ("This deference is 'based upon the judge's ability to assess the veracity and credibility of the potential juror.'") (quoting *Schwan v. State*, 65 A.3d 582, 589 (Del. 2013)); *see Banther v. State*, 823 A.2d 467, 483 (Del. 2003) ("When findings [of a trial judge] are based on determinations regarding the credibility of witnesses, the level of deference is even higher.").

[37] *See Cooke II*, 97 A.3d at 555 (citing *Patton* and *Schwan*, both of which were challenges to trial judges' examination of potential jurors during the selection process); s*ee also Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) ("The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise."); *id*. at 575 (explaining the "greater deference [accorded] to the trial court's findings [based on determinations regarding the credibility of witnesses]; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"). *And see, e.g.*, *State v. Taylor*, 2019 WL 4647669, at *5 (Del. Super. Ct. Sept. 23, 2019), *aff'd*, 2021 WL 1227762 (Del. Mar. 31, 2021) (discussing the trial judge's role when determining whether a prosecutor intentionally provoked a mistrial: "At bottom, when a prosecutor's intent behind certain trial behavior is at issue, the law relies heavily on the trial judge due to his or her experience, proximity,

In this case, a hearing was held and both parties submitted questions to the Court to better understand Juror No. 6's failure to disclose.[38]

Having conducted that examination, the Court is convinced that: (1) Juror No. 6 did not intentionally conceal that she had been charged in domestic incidents almost three decades before this trial; and (2) "there is no credible proof that [Juror No. 6]'s impartiality was affected, adversely or otherwise . . . ."[39]

## A. JUROR NO. 6'S INACCURATE ANSWER MAY HAVE BEEN TO A MATERIAL *VOIR DIRE* QUESTION, BUT IT WAS NOT AN INTENTIONAL FALSITY.

In determining whether to grant a new trial in a circumstance such as this, the *voir dire* question at issue must be material.[40] The question asked was:

> Have you, any member of your immediate family or a close personal friend ever been accused of, a victim of, or a witness to a criminal offense other than an ordinary traffic violation?[41]

For this analysis, the Court presumes this question material. The Delaware Supreme Court has recognized the utility of knowing about a juror's potential bias from personal interactions with the legal system.[42] This is particularly of concern—

---

and discretion. The trial judge is in the best position to determine whether a prosecutor's explanation of or excuse for his or her acts is contrived or authentic.") (internal citations omitted).

[38] *See* D.I. 61.

[39] *See Cooke I*, 2012 WL 3060956, at *11.

[40] *Id.* at *7.

[41] Jury Selection Tr. at 18.

[42] *See, e.g., Swan v. State*, 248 A.3d 839, 861-62 (Del. 2021), *abrogated on other grounds by Willis v. State*, 302 A.3d 417, 422 n.25 (Del. 2023).

though not the situation here—where a potential juror identifies as a victim.[43]

But a new trial isn't warranted just because a material question was answered incorrectly. No, to obtain a new trial, Mr. Mitchell must show that Juror No. 6's response to that question was "dishonest, meaning intentionally false."[44]

After the hearing, it is clear to the Court that Juror No. 6 believed she answered the question honestly during *voir dire* even though her answer was incorrect.[45] Delaware "has 'favorably cited the proposition that a juror's inaccurate response to a *voir dire* question based on a factual inaccuracy rather than dishonesty did not warrant a new trial.'"[46]

The Court finds that Juror No. 6's response was honest and made in good faith because the question never invoked her recollection of her prior arrests. Looking at the wording of the *voir dire* question, it uses "accused of," not "arrested." And jurors

---

[43] *See id.*; *see also Knox v. State*, 29 A.3d 217, 220-21 (Del. 2011).

[44] *Cooke I*, 2012 WL 3060956, at *7; *United States v. Sampson*, 820 F.Supp.2d 151, 170 (D. Mass. 2011) (defendant must prove "the inaccurate response was dishonest, meaning knowingly and intentionally false, rather than the result of a good faith misunderstanding or mistake"); *United States v. Holck*, 398 F.Supp.2d 338, 360 (E.D. Pa. 2005) ("The first prong of the *McDonough* test requires a showing that the juror intentionally and deliberately withheld material information."). *See also Brioady v. State*, 396 P.3d 822, 825 (Nev. 2017) ("Generally, this 'determination . . . turns upon whether or not [a juror] is guilty *of intentional concealment.*'") (quoting *Lopez v. State*, 769 P.2d 1276, 1290 (Nev. 1989)) (emphasis in original).

[45] *See* Mot. for New Trial Tr. at 12-15, 22-23.

[46] *Swan*, 248 A.3d at 862 (citing *Smallwood*, 2002 WL 31883015, at *1).

It raises the scenario mentioned by Justice Brennan in his concurrence in *McDonough*. 464 U.S. at 559 (Brennan, J., concurring) ("One easily can imagine cases in which a prospective juror provides what he subjectively believes to be an honest answer, yet that same answer is objectively incorrect . . .").

"are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges."[47] The wording of the *voir dire* question didn't immediately trigger Juror No. 6's recollection of her arrests from a quarter century before. The Court finds that wholly understandable and Juror No. 6's explanation credible.

Juror No. 6 stated that she didn't intend to deceive the Court, and she just forgot about those incidents—obviously, having long-since done her best to put them out of her mind.[48] When questioned about the arrests she became visibly upset reliving the traumatic personal experiences. Such a raw spontaneous reaction belied any intentional dishonesty or improper intent that would prejudice any party.[49] Juror No. 6's inaccurate response was mistaken and honest; she wasn't trying to intentionally conceal information that would affect her ability to be impartial.[50] As such, Mr. Mitchell has failed  to demonstrate that Juror No. 6's answer to the "accused-of" question warrants a new trial.[51]

---

[47] *McDonough*, 464 U.S. at 555.

[48] Mot. for New Trial Tr. at 12-15.

[49] *See* Mot. for New Trial Tr. at 15-17.

[50] The Court would categorize this juror's non-disclosure just as it did the *Cooke* juror's: "inadvertently inaccurate, rather than purposefully untrue." *Cooke II*, 97 A.3d at 555.

[51] *See Smallwood*, 2002 WL 31883015, at \*2; *see also United States v. Hodge*, 321 F.3d 429, 441 (3d Cir. 2003) ("Generally, we will not invalidate a jury verdict because of a juror's 'mistaken, though honest' response at *voir dire*.") (quoting *McDonough*, 464 U.S. at 556; *United States v. Ortiz*, 942 F.2d 903, 909 (5th Cir. 1991) ("Moreover—and much more important—[the juror]'s post-verdict dialogue with the district court suggests that he answered the *voir dire* query honestly yet inaccurately, something *McDonough* [  ] expressly permits.").

**B. AN ACCURATE ANSWER BY JUROR NO. 6 WOULD NOT HAVE GENERATED A VALID BASIS FOR A FOR-CAUSE CHALLENGE.**

Having concluded that Juror No. 6's answer wasn't intentionally false, the Court need not even move on to the second *McDonough* query—the question of whether Mr. Mitchell would have had a basis to strike her *for cause* had she accurately answered that particular *voir dire* question.[52] That said, Mr. Mitchell is equally unsuccessful in making that necessary showing.

Harkening to the *voir dire* method employed in his case, Mr. Mitchell says that if the correct answer (and, one must figure, its corresponding background and explanation) had been given, the Court would have struck Juror No. 6 for cause.[53] Not so.

First, Mr. Mitchell's assertion that all "individuals who had 'yes' answers [were] functionally struck for cause"[54] is incorrect. As explained and agreed to by the parties before jury selection took place, any potential juror that answered "yes" was moved to a secondary pool and they remained eligible as jurors, if needed.[55] This is not the same as being struck for cause.[56]

---

[52] *Cooke II*, 97 A.3d at 555.

[53] Def.'s Mot. for New Trial ¶¶ 19, 24.

[54] Def.'s Supp. Br. ¶ 11.

[55] Jury Selection Tr. at 4.

[56] *Cf. Swan*, 248 A.3d at 862; *see generally Collingwood v. State*, 594 A.2d 502, 504 (Del. 1991) (observing that the purpose of jury *voir dire* is to uncover any bias or prejudice of potential jurors in order to insure the participation of an impartial jury sworn to render a verdict on the evidence presented and in conformity with the instructions of the court and that it is a finding of one of these

Second, Mr. Mitchell suggests that "relief should be afforded to a defendant when a juror fails to accurately answer a material *voir dire* question and an honest answer would have resulted in the exercise of a *peremptory strike*."[57] But a juror's inaccurate answer must be a basis for a for-cause strike, not a peremptory strike.[58]

Juror No. 6's accurate answer alone would not be a basis for a for-cause strike. There was also no indication that Juror No. 6 was prejudiced or biased due to her experiences in 1998 and 2000. Indeed, it was clear during the post-trial hearing that her arrests never came to mind, so they could have hardly affected her during the trial and deliberations. With no indication that Juror No. 6 was prejudiced or biased due to her experiences, there were no grounds for a for-cause strike. Nor is there any reason to believe that those experiences or her non-disclosure themselves demonstrate bias.[59]

---

concerns that leads a trial judge to excuse a prospective juror for cause); *Sampson v. United States*, 724 F.3d 150, 165 (1st Cir. 2013) ("Jurors normally are subject to excusal for cause if they are biased or if they fail to satisfy statutory qualifications.").

[57] Def.'s Supp. Br. at 6-7 (emphasis added) (discussing *Banther*, 823 A.2d at 482-83).

[58] *See McDonough*, 464 U.S. at 555 (the Court explained that a complaining party cannot be granted a new trial if the only purpose is "to recreate the peremptory challenge process because counsel lacked . . . information"); *see Sampson*, 820 F.Supp.2d at 202 ("[I]n the context of a juror's inaccurate responses to questions on *voir dire*, mere injury to the ability to exercise peremptory challenges properly is not a ground on which a new trial may be granted."); *see also United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) (reiterating that "'peremptory challenges [to prospective jurors] are not of constitutional dimension,' . . . rather, they are one means to achieve the constitutionally required end of an impartial jury") (quoting *Ross v. Oklahoma,* 487 U.S. 81, 108 (1988)).

[59] *See United States v. Bishop*, 264 F.3d 535, 555 (5th Cir. 2001), *cert. denied*, 535 U.S. 1016 (2002) ("Failure to disclose a conviction due to a mistaken, but honest belief the record was expunged, or due to embarrassment, also does not suggest bias. Even when a juror's non-

## V. CONCLUSION

Having reviewed the record carefully, the Court concludes Mr. Mitchell has neither met his burden of proving that Juror No. 6 intentionally concealed her prior misdemeanor arrests nor that had she been fully accurate during *voir dire* there would have been a valid basis to challenge her for cause.[60] Quite simply, the juror's honest but mistaken answer to a single *voir dire* question does not amount to a violation of Mr. Mitchell's constitutional rights that would entitle him to a new trial.

Accordingly, this Motion for a New Trial is **DENIED**.

**SO ORDERED,**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

Original to Prothonotary

---

disclosure is dishonest as opposed to mistaken, his behavior is not a basis for reversal unless the dishonesty appears to be rooted in bias or prejudice.") (internal citations omitted).

[60] *See Jones v. Kent County*, 115 F.4th 504, 517 (6th Cir. 2024) (explaining when a new trial might be appropriate under *McDonough*).